**Ernest WHIPPLER, Appellant,**

v.

**A. L. DUTTON, Warden, Georgia State Prison, Appellee.**

No. 24428.

United States Court of Appeals Fifth Circuit.

Feb. 7, 1968.

Howard Moore, Jr., Atlanta, Ga., Jack Greenberg, New York City, for appellant.

Marion O. Gordon, Asst. Atty. Gen., Atlanta, Ga., for appellee.

Before TUTTLE, GEWIN and AINSWORTH, Circuit Judges.

GEWIN, Circuit Judge.

Appellant, convicted of murder and now under a death sentence, petitioned the United States District Court for the Southern District of Georgia for a writ of habeas corpus. After a full evidentiary hearing the district court denied the petition. We reverse.

The facts may be briefly stated. On July 16, 1960, J. C. Chambers, a white grocer, was slain and robbed at his store near Macon, Georgia. Petitioner, a Negro man of little education and limited mental ability,[1] was taken into custody at the sheriff's office on July 19 when he went there in search of his wife. He was fingerprinted without objection. Some six to seven hours after the petitioner was arrested, a police officer searched his automobile without a search warrant and found eight one-dollar bills and two money wrappers which, although objected to by counsel, were introduced into evidence at the trial. The record shows that petitioner was interrogated at reasonable hours for periods of time ranging from 45 minutes to two hours from the time of his arrest until July 21. Police officers testified that petitioner was apprised of his right to remain silent and that he was entitled to the services and presence of an attorney. On July 21 petitioner signed a written statement that he had killed the deceased in self defense and then, as he left the store, picked up an open cigar box which he saw contained money. This statement

---

1. The record indicates that appellant had an intelligence quotient of 66 and that he had completed about five years of school. He was an unskilled laborer. In his unsworn statement before the state trial court appellant stated:

"I stayed in the Navy six months, they didn't thought my mind was good enough for me to be in the Navy, they turned me out on section 8 for discharge. When they discharge me they didn't let me wear the uniform, they bought me a suit."

was admitted into evidence at the trial following a hearing, held outside the presence of the jury, as to the voluntariness of petitioner's admissions. At trial petitioner made an unsworn statement to the jury which, in part, contradicted the signed statement. While petitioner testified that he had slain the deceased with a knife in self defense, he claimed that another man, Williams, who was also in the deceased's store, had committed the robbery by taking the cigar box which he gave to petitioner with instructions to take the box home. According to petitioner he did not discover that the box contained money until he opened it after arriving at his home.

Petitioner was indicted by the Grand Jury of Bibb County on August 29, 1960, for the murder of J. C. Chambers. The next day three attorneys were appointed by the court to represent him. On December 7, 1960, in the Superior Court of Bibb County, Georgia, the jury returned a verdict of guilty without a recommendation of mercy. In accordance with the verdict, the court sentenced petitioner to death by electrocution. The Georgia Supreme Court affirmed, Whippler v. State, 218 Ga. 198, 126 S.E.2d 744 (1962), and certiorari was denied. Whippler v. Georgia, 375 U.S. 960, 84 S.Ct. 446, 11 L.Ed. 2d 318 (1963). On May 13, 1964, he petitioned the United States District Court for the Southern District of Georgia for a writ of habeas corpus which was denied by the court on the ground that petitioner, by not applying for state habeas corpus, had failed to exhaust his state remedies. This court reversed and remanded for an evidentiary hearing on petitioner's contention that he had been unlawfully convicted. Whippler v. Balkcom, 342 F.2d 388 (5 Cir. 1965).

■ In his petition for a writ of habeas corpus, petitioner attacked his conviction on several grounds: [2] (1) the selection of jurors which indicted and convicted him was made on the basis of race in violation of the 14th amendment, (2) the trial judge did not determine the voluntariness of his admissions as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (3) under Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), evidence seized in violation of the 4th amendment should have been excluded,[3] and (4) his admissions, made during custodial interrogation without the assistance of counsel, were coerced and therefore should have been excluded. At the hearing in the district court counsel for both parties stipulated that the record of petitioner's state court trial would be made a part of the record in the instant case and that no additional facts would be presented to the court concerning the issues of unlawful search and seizure, voluntariness of petitioner's admissions and the trial judge's determination of voluntariness. Also, the parties stipulated certain facts pertaining to the jury issue which will be discussed more thoroughly later in this opinion. The only testimony given at the hearing chiefly concerned the question of whether petitioner had waived his right to challenge the selection of jurors. We immediately dispose of any question with respect to a waiver of the jury discrimination issue. The record clearly demonstrates that the appellant did not waive this issue. See Cobb v. Balkcom, 339 F. 2d 95, (5 Cir. 1964).

---

2. In addition to the four grounds listed in the body of this opinion, petitioner also alleged in his habeas petition that he was confined for approximately five months without benefit of a commitment hearing and that police officers caused him to incriminate himself by taking his fingerprints under the pretense of doing so for custodial purposes and actually using them to obtain a conviction. Although the district court found against petitioner

on these grounds, they are not urged on appeal.

3. Since Mapp applies to cases which were pending on direct review at the time it was rendered, June 19, 1961, its principles are applicable to the instant case. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). See also Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

On December 16, 1966, the district court entered its order denying petitioner's application for habeas corpus. The court found "that the jury commissioners fairly and honestly discharged their duties and did not discriminate against the Negro race in the selection of the jury lists," that even though Jackson v. Denno is not applicable in that the decision is not retroactive, the requirements of *Jackson* were met, and that the evidence alleged to have been illegally seized did not materially affect the conviction.

Petitioner contends on appeal that the findings of the district court are clearly erroneous and that the court erred in not ruling on petitioner's claim that his admissions were coerced. Petitioner particularly attacks the finding that Negroes were not discriminated against in the selection of jurors in light of the recent Supreme Court decision, Whitus v. State of Georgia, 385 U.S. 545, 87 S. Ct. 643, 17 L.Ed.2d 599 (1967), rendered subsequent to the district court's ruling. Our study of *Whitus* and the facts of this case convince us that the court's order must be reversed on this issue.

At the time of petitioner's trial Georgia law required the jury commissioners to select the names of prospective jurors from the books of the county tax receiver. Ga.Code Ann. § 59–106.[4] These tax digests are made up from tax return sheets furnished to the tax receiver by the State Revenue Commissioner. Ga. Code Ann. § 92–6301. Until 1966 the digests were required by law, Ga.Code Ann. § 92–6307,[5] to be maintained on a racially segregated basis. In *Whitus* the State admitted that prior to 1965 the tax return sheets from which the digests were made were white for white taxpayers and yellow for Negro taxpayers. The state further admitted that the jury list from which the grand and petit juries were selected which indicted and tried the defendant had been made up in part from a tax digest which had

been prepared from the white and yellow tax return sheets and such digest was segregated into two sections—one for white and the other for Negro taxpayers. Also in *Whitus*, evidence was presented which demonstrated a marked disparity between the percentage of Negroes on the tax digest and those on the venires. The Supreme Court found that these facts, a segregated system of jury selection plus mere token inclusion of members of the Negro race on the jury list, constituted a prima facie case of systematic exclusion of Negroes from grand and petit juries by reason of their race. The State offered no explanation for the percentage disparity mentioned above. However, the State did testify that it did not exclude Negroes because of race but the court found this to be insufficient to overcome a prima facie case.

The record in the instant case reveals the following stipulated facts: The county tax digests of Bibb County, Georgia, were used in selecting the jurors which indicted and tried the petitioner. In accordance with state law these digests were kept by race. The names of white and Negro taxpayers were kept and enrolled in separate books or digests labeled "WHITE" and "COLORED", respectively. On each page of the digests above the taxpayers' names there was printed in capitals: "RETURNS OF WHITE TAXPAYERS" or "RETURNS OF COLORED TAXPAYERS". However, the tax digests were not the sole source for selection of jurors but the commissioners consulted various other data, including the City Directory, police records, credit reports and past jury lists. In 1959 there were 31,649 white taxpayers and 7,913 Negro taxpayers listed on the tax digests of Bibb County and in 1960, 32,053 white and 7,940 Negro taxpayers were listed on the digest. The grand and traverse jury books for 1960 contained the names of 4,480 traverse jurors and 228 grand jurors. Of the 4,480, ap-

---

4. The statute has now been completely revised by the Georgia Legislature. Acts 1967, p. 251.

5. This section was repealed in 1966. Acts 1966, p. 393.

proximately 86 were Negro.[6] The jury list for the Bibb Superior Court for the criminal trial week of December 5, 1960, contained 190 names. Of these 190, only two were of the Negro race, neither of whom appeared on the panel of 40 from which Whippler's jury was chosen.[7] It was admitted that persons selected to serve as grand jurors are taken from the traverse jury list. Members of the Board of Jury Commissioners were white persons and no Negro had served as a jury commissioner "for a number of years prior to 1960."

■ It is readily seen that these facts are substantially similar to those in *Whitus*. Consequently, petitioner has made out a prima facie case of systematic exclusion of Negroes from jury service by reason of their race. The State has admitted that the segregated tax digests were used in the jury selection and has offered no explanation for the disparity between the number of Negroes eligible for jury service and the number actually serving. Therefore, in light of *Whitus*, we find that the State has failed to meet the burden of re-

butting petitioner's prima facie case and the finding of the trial court that the jury commissioners "did not discriminate against the Negro race in the selection of the jury list" is clearly erroneous. See also Jones v. Georgia, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25, and Sims v. State of Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634. We therefore reverse the district court's order denying the petitioner's application for a writ of habeas corpus.

■ It should be noted that after Whitus v. State of Georgia was decided the State filed a motion in this court seeking remand of the case to the district court for a hearing on the jury issue.[8] This motion was denied June 1, 1967. We, again, decline to remand. The State had ample opportunity at the hearing below to present evidence on this issue. Moreover, we feel that this procedure is foreclosed by *Whitus* and the undisputed facts revealed by the record.

■■ Having reversed this case on the jury issue, it is not necessary for us

---

6. Simple arithmetic shows that even though Negroes constituted approximately one-fourth of the total number of taxpayers in Bibb County, Negroes constituted less than 2% of the persons named on the jury list.

7. In felony prosecutions in Georgia jurors are struck from a basic panel of 48. See Georgia Code Ann. § 59–801. At the hearing the respondent made the following admission:

    "Respondent admits that neither Jesse Baltimore nor Lemuel Mabry [Negroes] sat on the trial of Petitioner's case and were not among the first 48 jurors put upon the Petitioner and states as additional information that from the panel of 40 jurors from which the trial jury was selected, 6 were disqualified for cause, the State struck 4, and the defense struck 18."

8. The following is from the motion filed by the State:

    "The cause should be remanded because of a recent decision by the Supreme Court of the United States, to-wit: Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, (1967).

"Appellant alleged in the District Court that the grand and traverse juries which indicted, convicted and sentenced him to death were organized in violation of the Fourteenth Amendment to the United States Constitution. It was admitted by Respondent Appellee that the jurors were selected from a segregated tax digest; and that Bibb County had, in 1960, 32,053 white taxpayers' and 7,940 colored taxpayers' names on the tax digest from which 4,480 names were selected as traverse jurors. There were eighty-six colored traverse jurors included in the total prospective traverse jury list."

\* \* \* \* \*

"The evidence reveals that less than 2 per cent of the traverse jurors were Negro. The 25 per cent figure is derived from the percent of Negroes on the tax digest. Of the 190 jurors summoned for the December 1960 Term of Bibb County, two were Negroes and none were on the jury which tried and convicted Appellant."

to pass on the merits of petitioner's other contentions. We also find it unnecessary to discuss these constitutional questions even though the petitioner is subject to retrial, since it is well established that only voluntary admissions are admissible into evidence, that their voluntariness must be determined by the trial judge outside of the presence of the jury in accordance with Jackson v. Denno, supra,[9] and Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), and that evidence seized in violation of the 4th amendment must be excluded in state criminal trials under Mapp v. Ohio, supra.

The record in the instant case does not show whether the method of jury selection in Bibb County has been revised in accordance with federal requirements. Since such a revision may be somewhat complex, we feel that the circumstances justify giving the State a more lengthy time in which to retry the petitioner. Accordingly, the State of Georgia is allowed six months from the date of this opinion or its final test by certiorari, or otherwise, in which to prosecute the petitioner, and if the State fails to so prosecute, he is to be released. In order that a new trial may be conducted as promptly as is reasonably feasible within the limitation herein provided, we reverse the judgment of the District Court dismissing the petition, and direct that the writ be issued forthwith and that the judgment of conviction and sentence be set aside to permit the state to reindict appellant and proceed with a new trial. See Vanleeward v. Rutledge, 369 F.2d 584 (5 Cir. 1966); Cobb v. Balkcom, supra.

Judgment reversed.

---

9. The following is from the trial brief of the Attorney General of Georgia filed in the district court on behalf of the respondent:
"In holding that the petitioner was entitled to a State Court hearing on the question of the voluntariness of his confession, the United States Supreme Court held in Denno v. Jackson, supra, at 395, 396, 84 S.Ct. at 1774 that '[i]t is both practical and desirable that *in cases to be tried hereafter* a proper determination of voluntariness be made prior to the admission of the confession to the jury. * * * ' " (Emphasis added in brief)