**Freddie ROACH, Appellant,**

v.

**G. T. MAULDIN, Sheriff of Whitfield County, Georgia, et al., Appellees.**

No. 24793.

United States Court of Appeals Fifth Circuit.

March 18, 1968.

Rehearing Denied April 30, 1968.

John T. Avrett, Dalton, Ga., for appellant.

Mathew Robins, Asst. Atty. Gen., Atlanta, Ga., Robert L. Vining, Jr., Sol. Gen., Dalton, Ga., Arthur K. Bolton, Atty. Gen., Marion O. Gordon, Asst. Atty. Gen., Atlanta, Ga., for appellees.

Before COLEMAN and SIMPSON, Circuit Judges, and DAWKINS, District Judge.

COLEMAN, Circuit Judge:

On March 2, 1967, after an evidentiary hearing, the United States District Court for the Northern District of Georgia denied appellant a writ of habeas corpus, Roach v. Mauldin, 277 F.Supp. 54. This judgment will be affirmed.

On May 18, 1965, in the Circuit Court of Whitfield County, Georgia, Roach was convicted of a rape alleged to have been committed on September 8, 1964. He was sentenced to suffer the penalty of death. His conviction was affirmed by the Georgia Supreme Court, Roach v. State, 221 Ga. 783, 147 S.E.2d 299. The Supreme Court denied certiorari, 385 U.S. 935, 87 S.Ct. 297, 17 L.Ed.2d 215 (1966).

The record reveals that twice previously Roach had been convicted in the

Georgia Courts of assaults with intent to rape and for these offenses had been imprisoned in the state penitentiary.

In his application for habeas the convict contended that his federally protected constitutional rights had been violated in three particulars, to-wit, (1) he was denied a request for a mental examination prior to trial, (2) evidence alleged to have been obtained as the result of an illegal search and seizure was used to secure his conviction, and (3) the Grand Jury which returned the indictment and the trial jury which convicted him were unconstitutionally selected because their names came from the racially orientated tax digest of Whitfield County pursuant to Georgia Code § 59–106.

As above noted, the opinion of the District Court, denying the writ, has been published. The factual findings and careful reasoning of the District Court are thus of record.

As to the request for a mental examination and as to the alleged illegal search and seizure we fully adopt and completely approve the opinion of the District Court.

With some additional observations, we also adopt and approve what was said on the question of jury selection.

█ On that issue the trial court exhaustively considered the existing precedents, particularly Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 743, 17 L.Ed.2d 599. It was there held that a segregated jury source (such as the earlier Georgia Tax Digests) which result in racially imbalanced juries, is improper. The Court below pointed out that this appellant, of the white race, did not attack the tax digest for racial reasons but solely because non-property owners were not on the tax lists and were thus systematically excluded from jury service. The District Court felt, and we agree, that in the absence of racial considerations the use of tax digests, which necessarily exclude nonproperty owners, seems to have been settled as not prima facie unconstitutional in Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1952).

We note, however, that this Court has twice recently had occasion to apply *Whitus*. In the first case, White v. McHan, Warden, 386 F.2d 817 (1967), it was held that *Whitus* imposes upon the petitioner the burden of presenting a *prima facie* case of deliberate discrimination and that the burden had not been met.

In Whippler v. Dutton, Warden, [February 7, 5 Cir. 1968], 391 F.2d 425, it was said,

"Also in Whitus, evidence was presented which demonstrated a marked disparity between the percentage of Negroes on the tax digest and those on the veniries. The Supreme Court found that these facts, a segregated system of jury selection plus mere token inclusion of members of the Negro race on the jury list, constituted a prima facie case of systematic exclusion of Negroes from grand and petit juries by reason of their race. The State offered no explanation for the percentage disparity mentioned above."

The record referred to in *Whippler* showed that there were 32,053 white taxpayers and 7940 Negro taxpayers listed on the tax digest of Bibb County, yet the jury books for 1960 listed 86 Negroes as opposed to 4394 whites; in other words, while Negroes constituted approximately twenty-five percent of the total number of taxpayers they constituted less than 2% of the persons named on the jury list. This was held to constitute a prima facie case of systematic exclusion of Negroes from jury service because of their race. The writ was ordered issued.

█ In the case now before us the District Court pointed out that the jury lists were taken from the 1963 segregated tax digest of Whitfield County. Nevertheless, Negroes constituted 4.23% of the total population of the county, including men, women and children. On the tax digest, the eligible prospective jurors numbered 2.23% Negro. The trial jury list contained 1.58% Negro and the grand jury list .94% Negro, or a maximum

imbalance of less than 1% on the trial jury and slightly over 1% on the grand jury. The Court further found that Negroes have traditionally served on juries in Whitfield County and consequently held that such "minimal and insignificant disparity in percentages rebuts any presumption from *Whitus*", citing Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1964), and Billingsley v. Clayton, 359 F.2d 13, 5 Cir., 1966.

Without deciding whether Roach had the requisite standing to invoke *Whitus*, we are of the opinion that in this conclusion the District Court was eminently correct and that the judgment must in all respects be

Affirmed.