Application of Robert L. BELL,
Petitioner-Appellant,

v.

STATE OF KANSAS, Respondent-
Appellee.

No. 71–1128.

United States Court of Appeals,
Tenth Circuit.

Dec. 9, 1971.

Rehearing Denied Jan. 5, 1972.

Lewis, Chief Judge, dissented in part and filed opinion.

John C. Humpage, Topeka, Kan. (Humpage & Stewart, Topeka, Kan., on the briefs), for petitioner-appellant.

Donald R. Hoffman, Asst. Atty. Gen. (Vern Miller, Atty. Gen., and Edward G.

Collister, Jr., Asst. Atty. Gen., on the brief), for respondent-appellee.

Before LEWIS, Chief Judge, and PHILLIPS and McWILLIAMS, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

This is an appeal from an order discharging a writ of habeas corpus, issued on the application of Bell by the United States District Court for the District of Kansas, an order dismissing the habeas corpus action, and an order denying Bell's petition for rehearing.

On February 2, 1968, a search warrant had been issued for a search of the premises at 2300 Adams Street, Topeka, Kansas, a house located thereon, and a truck believed to be located at such address. The object of the search was a safe which had been taken in a burglary. The validity of that search is not involved here.

The search warrant was in the hands of Marion Bartlett, a sergeant in the Topeka Police Force, who was in charge of the search. Don Demore, a Topeka police officer, was a member of the search party, and it was his duty to maintain a surveillance on one side of the house and the premises. Bartlett had been notified that the truck was on the premises. When he reached a point across the street, opposite the premises, Bartlett parked his car on the far side of the street from the premises and started to walk to the house. As he arrived at the door of the house, Bell and a female companion drove into the yard in a Mustang automobile. Bell parked the Mustang about five feet from the house, in the parkway. Demore held up his identification and said, "Police Officer." As he approached Bell, Demore observed Bell withdraw from his right-hand pocket an object that appeared to be a gun or pistol. Demore then drew his weapon and told Bell to drop the gun. Bell was on the left side of the Mustang, near the left door, and he leaned back and dropped the pistol onto the rear seat of the Mustang. The left door was open and the interior lights were on. As Bell

dropped the pistol, Demore, by such interior lights, saw the pistol and also was able to see it where it lay on the rear seat of the Mustang, without entering the vehicle. Bell was so close to the open door of the Mustang that he could have reached in from where he stood and seized the pistol that he had dropped on the rear seat. Demore reached into the Mustang, seized the pistol from the rear seat, and retained it.

Ordinance 12–212 of the City of Topeka defines the offense of carrying a concealed weapon. In part here material, it reads:

"* * * Any person who is not an officer of the law, or deputy to such officer, who shall be found within the corporate limits of the City, carrying on his person in a concealed manner, any pistol, (here are set forth a number of other deadly weapons) shall be deemed guilty of a misdemeanor. * * *"

The ordinance also provides a penalty for such offense.

On February 5, 1968, a complaint was filed in the Municipal Court of Topeka, Kansas, charging Bell with carrying a concealed weapon on February 2, 1968, in the City of Topeka. On February 6, 1968, a warrant was issued for the arrest of Bell. Bell was arrested on such warrant on February 7, 1968.

Bell entered a plea of not guilty. He was tried on the complaint on April 11, 1968. Demore testified as a witness for the city and Bell testified in his own behalf. At the conclusion of the evidence, the court found that Bell was guilty and sentenced him to pay a fine of $100 and the costs and to serve 90 days in jail. Such judgment became final on December 3, 1968, when the District Court of Shawnee County, Kansas, dismissed Bell's appeal from his conviction in the Municipal Court of Topeka, Kansas.

On May 16, 1968, an information was filed against Bell in the District Court of Shawnee County, Kansas, which charged that "Robert L. Bell at the County of Shawnee, in the State of Kansas

* * * on the _____ day of February, A.D. 1968, * * * having been previously convicted of grand larceny, forgery, and burglary, did have and keep in his possession and under his control a certain pistol, to-wit: a .38 caliber Colt, snub nose revolver, Serial No. 832443, * * *." (K.S.A. 21–2611)

The Kansas firearms statute, upon which the information in the state court was based, K.S.A. 21–2611, in part here material, reads:

"It shall be unlawful for any person who has previously been convicted in this state or elsewhere of committing or attempting to commit * * * burglary (a great many other felonies are enumerated, but since burglary was the only one involved in the instant case, we omit the others) to own a pistol, or to have or keep a pistol in his possession, or under his control. * * *"

Prior to the entry of Bell's plea thereto, the court, on motion of the state, struck from the information, in accordance with K.S.A. 62–808, the word "forgery."[1]

After Bell had pleaded, and before trial, the court, with the consent of both parties, struck from the information the words "grand larceny," and counsel for Bell by stipulation admitted that Bell had previously been convicted of burglary. Such elimination was to Bell's advantage, because it eliminated the introduction of any evidence at the trial that Bell had been previously convicted of the crimes of grand larceny and forgery.

The trial of Bell on the information commenced on January 8, 1969, and was concluded on January 10, 1969, when the jury returned a verdict of guilty.

On February 14, 1969, Bell's counsel was served with notice that the state would invoke the Kansas habitual criminal statute against him. At a hearing on February 19 and 20, 1969, the state introduced evidence of prior felony convictions. Bell made no objection to the court proceeding with such hearing on February 19 and 20, 1969, on the ground that his counsel had not had sufficient time to prepare to meet the state's evidence, nor did Bell ask for a continuance to give his counsel more time to prepare for such hearing.[2]

Bell offered no evidence to controvert the state's evidence of his prior convictions, although he was given full opportunity so to do, and he made no showing of any prejudice because the hearing was held on February 19 and 20, 1969.

On February 20, 1969, the court sentenced Bell, under the Kansas habitual criminal statute, to imprisonment in the Kansas State Penitentiary for a term of not less than 15 years. Bell appealed from the judgment and sentence to the Supreme Court of Kansas. On May 9, 1970, it affirmed the judgment and sentence. See State v. Bell, 205 Kan. 380, 469 P.2d 448.

When the trial on the information in the District Court of Shawnee County, Kansas, reached the point where evidence was about to be introduced of what occurred when the officers went to 2300 Adams Street, Topeka, Kansas, to serve the search warrant, leading up to the seizure of the pistol, and with respect to such seizure, counsel for Bell objected

1. K.S.A. 62–808 provides that "[a]n information may be amended in a matter of substance or form without leave of court at any time before the defendant pleads." State v. Bell, 205 Kan. 380, 469 P.2d 448, 450.

2. Bell did make an objection to the hearing on February 19, 1969, on the ground that it was had after he had filed his motion for a new trial, and that he was precluded from incorporating certain errors that occurred on February 19,

1969, in his motion for rehearing. Such objection was without foundation. It resulted in no prejudice to Bell, because under Rule 17 of the Supreme Court of Kansas (203 Kan. xxxiv) trial errors may be specified for review in a criminal appeal, although a motion for a new trial has not been made, and it is no longer necessary to specify trial errors in a motion for a new trial, in order to obtain a review thereof on appeal. State v. Bell, 205 Kan. 380, 469 P.2d 448, 451.

on the ground that such seizure was unlawful and unreasonable and violated Bell's rights under the Fourth Amendment to the Constitution of the United States. Thereupon, the trial court sent the jury out, recessed the trial, and proceeded to hear evidence on the motion to suppress.

At the hearing on the motion, Bartlett and Demore testified to the facts above stated, with respect to the issuance of the search warrant, the actions of the officers in going to the premises at 2300 Adams Street to serve the search warrant, what they observed there, and the facts leading up to the seizure and the retention of the pistol.

The state district court held that the motion to suppress the evidence of what occurred when the officers went to 2300 Adams Street to serve the search warrant, and the facts with reference to the pistol and the seizure and retention thereof, was not well founded and denied the motion to suppress.

In passing on that issue on Bell's state court appeal, the Supreme Court of Kansas, in its opinion in State v. Bell, 205 Kan. 380, 469 P.2d 448, 451–452, said:

"We conclude that the pistol was properly retrieved from the automobile and admitted in evidence against the defendant. The officer had reasonable grounds to believe the defendant was dangerous when defendant drew the pistol from his pocket and dropped it in the back seat of the automobile occupied by his female companion. It was reasonable and necessary for the protection of the officer and others to take swift measures to recover the pistol from the automobile and neutralize the threat of harm which it posed. The officer restricted his seizure to the pistol and such seizure was reasonable under the Fourth Amendment * * *.

* * * * * *

" * * * The seizure was both reasonable and necessary under the exigencies. Seizure was dictated by the facts known to the officer in order to neutralize the threat of harm inherent in the situation. Since the pistol was legally seized it was admissible in evidence and defendant's motion to suppress was properly overruled."

The Supreme Court of Kansas also held that five days was ample time for Bell to prepare his defense to the state's evidence at the proceeding on February 19 and 20, 1969, to establish that the Kansas habitual criminal statute was applicable, and that under the facts and circumstances, Bell suffered no prejudice because the hearing was held as early as February 19 and 20, 1969.

Shortly after his conviction on the state charge had been upheld by the Supreme Court of Kansas on May 9, 1970, Bell, on June 22, 1970, filed his application for a writ of habeas corpus in the United States District Court for the District of Kansas. In such application, to support his claim that the state court sentence was invalid, Bell alleged generally violations by the state of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and attached copies of the record of the transcript of evidence introduced, and of all the proceedings in his trial in the state court. He also attached as exhibits to his petition copies of a complaint filed in the Municipal Court of Topeka, Kansas, charging Bell with carrying a concealed weapon in violation of Topeka City Ordinance 12–212, the warrant issued on such complaint, the return of the officers, a summary of the proceeding in the municipal court at the trial of Bell and the judgment of conviction and the sentence imposed on Bell by such court and the order of the state district court dismissing Bell's appeal from such judgment and sentence.

But Bell's application is wholly lacking in specificity with respect to the particular grounds on which he bases his claims for relief. However, we think that is immaterial, because two of the three grounds which the court considered in determining whether Bell was entitled to relief are fully set out in the court's opinion and order, filed August 7, 1970,

in which it decided Bell was not entitled to relief and ordered that the writ be discharged and Bell's application dismissed; and the third ground considered by the court is set out by Bell for the first time in his petition for a rehearing and is also fully set out in the court's written opinion and order, filed November 16, 1970, denying the petition for a rehearing.

Bell has never at any time sought relief on the ground his state court sentence was invalid by invoking any of the postconviction remedies available to him in the Kansas courts.

Counsel for the state contend that the federal court should have dismissed Bell's application for the writ because he had not exhausted his state court remedies.

In response to that contention, the court, in its written opinion, filed on August 7, 1970, said it could dismiss the application on the ground Bell had not exhausted his state court remedies. But in such opinion the court further said:

" * * * the Court is not bound to do this and in its discretion may hear and determine issues presented by evidence and records before it, where serious violations of constitutional rights are involved. The exhaustion of state remedies required by 28 U.S.C. § 2254 is a matter of comity and not of jurisdiction. Whippler v. Balkcom, 342 F.2d 388 (5th Cir.); Wood v. Crouse, 389 F.2d 747, 749 (10th Cir.). In view of the fact that the certain constitutional issues have been presented to the state courts on a full and complete record, and have been considered by the sentencing court and the Supreme Court of Kansas, this Court believes there is merit in the petitioner's claim that to require him to again submit these questions to the state courts would require repetition, would be time-consuming and would, in fact, not deprive the state courts from an opportunity to consider the questions involved which have been fully briefed and presented to them by way of motion for a new trial, and later by way of appeal from the conviction, and an extensive motion for rehearing presented to the Supreme Court. This Court agrees with petitioner that after considering the record in this case, as presented by the parties, it would be futile to seek relief in the Kansas state courts on the issues that have been considered by those courts. * *.

* * * * * *

" * * * The Court agrees with respondent that the only issues raised which reach constitutional proportions are (1) the sufficiency of notice of the state's intention to invoke the Habitual Criminal Act, and (2) the seizure of the pistol from defendant's automobile without benefit of a search warrant."

The United States District Court, by its written opinion and order discharging the writ and dismissing Bell's application therefor, filed on August 7, 1970, considered and decided only the first two grounds for relief presented by Bell, viz:

1. That the notice given Bell's counsel on February 14, 1969, that the state would invoke the Kansas habitual criminal statute against Bell and which the District Court of Shawnee County, Kansas, heard on February 19 and 20, 1969, did not afford counsel for Bell sufficient time to prepare Bell's defense to the state's evidence of prior convictions and to properly represent Bell at such hearing, and;

2. That Demore's reaching into the Mustang automobile, taking the pistol therefrom, and retaining possession thereof was an unreasonable and unlawful search and seizure and violated Bell's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

We agree with the United States District Court that after the District Court of Shawnee County, Kansas, in which Bell was convicted, and the Supreme Court of Kansas, on Bell's appeal from such conviction, on a complete record and after a full and thorough hearing, held adversely to Bell's contentions

and with respect to the first two grounds for relief asserted by him and considered and decided by the United States District Court, which we set out, supra, it would have been futile for Bell to have sought postconviction relief in the courts of Kansas; and that Bell was not required to seek further state court relief before seeking relief in a federal court.

The provisions of the Fourth Amendment are made applicable to the states and their agencies by the Fourteenth Amendment.[3]

The proscriptions of the Fourth Amendment are made applicable by the Fourteenth Amendment to searches and seizures by state officers.[4]

Evidence seized in violation of the Fourth Amendment is inadmissible in state criminal trials.[5]

■ We are of the opinion that the seizure and retention of the pistol by Demore were fully justified under the attendant facts and circumstances. After Demore had shown his badge and identified himself as a police officer, and as he approached Bell and the Mustang, Bell drew the pistol from a right-hand pocket. Demore then drew his gun and ordered Bell to drop the pistol. Instead of dropping the pistol on the ground, Bell dropped it on the left side of the rear seat of the Mustang, where he could reach it through the open left-hand door of the Mustang. The pistol being within Bell's reach created a situation of potential danger to Demore and his fellow officers, and Demore had reasonable cause to believe from Bell's actions that it was necessary for the protection of himself and his fellow officers that he quickly seize the pistol and retain possession thereof and thereby remove such danger.

Demore restricted his seizure to the pistol. He made no search of the automobile nor of Bell's person.

We conclude that Demore's actions were fully justified and lawful and constituted no violation of the Fourth Amendment.

■ Bell was first notified that the state intended to invoke the Kansas Habitual Criminal Act against him on February 14, 1969. The matter of imposition of sentence on Bell came on for hearing on February 19, 1969, and was concluded on February 20, 1969. As stated above, one ground relied on by Bell in support of his application for the writ of habeas corpus was that the period between his receipt of such notice on February 14, 1969, and the commencement of the hearing on February 19, 1969, did not afford his counsel sufficient time to prepare to represent and defend Bell at the sentencing hearing. At such hearing, the state offered two exhibits, numbered 1 and 2. Exhibit 1 showed two prior convictions of Bell. It consisted of a certified copy of a journal entry commitment and also a fingerprint card and a photograph of the person convicted, showing the conviction of Bell on May 19, 1953, of uttering a forged instrument; also a certified copy of another journal entry and a fingerprint card and photograph showing the conviction of Bell on May 19, 1953, for child desertion. All of the matters set forth in Exhibit 1 were duly certified and authenticated.

Exhibit 2 was a certified copy of a journal entry commitment and also a fingerprint card and photograph of the person convicted, showing a conviction on May 3, 1947, of the offense of grand larceny of a person under the name of Robert Wheaton.

3. Brulay v. United States, 9 Cir., 383 F.2d 345, 348, cert. denied 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478; Ker v. California, 374 U.S. 23, 30, 83 S.Ct. 1623, 10 L.Ed.2d 726; Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930.

4. Ponce v. Craven, 9 Cir., 409 F.2d 621, 624; United States ex rel. McArthur v. Rundle, 3 Cir., 402 F.2d 701, 704; Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

5. Whippler v. Dutton, 5 Cir., 391 F.2d 425, 430; Mapp v. Ohio, 367 U.S. 643, 645, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Massey v. United States, 10 Cir., 358 F.2d 782, 785.

When the court questioned the sufficiency of the state's evidence, observing that the photograph was taken in 1947 or prior thereto, the state asserted that Bell had testified at the trial on the state court information that he had used the name "Wheaton." The court adjourned the matter over to February 20 to examine the transcript of Bell's criminal trial. The transcript showed that Bell's mother and stepfather were named "Wheaton," spelled the same way as it appeared in Exhibit 2. The court still indicated doubt as to the sufficiency of the evidence. The state then introduced evidence of a fingerprint expert who duly qualified as such. He testified he had examined the fingerprints of Bell and the fingerprints on the card in Exhibit 2, and that it was his opinion that they were the fingerprints of the same person.

Bell, of course, knew whether he had been convicted of the offenses shown by Exhibit 1, and whether he was the "Wheaton" who was convicted as shown by Exhibit 2. Nevertheless, in response to the court's question to Bell's counsel as to whether he desired to offer any evidence, the answer was "No."

The United States District Court held in the habeas corpus proceeding that there was nothing in the record indicating that Bell suffered any prejudice because his counsel did not have more than five days to prepare for the sentencing hearing, held on February 19 and 20, and that no constitutional right of Bell's was infringed on such proceeding.

The Supreme Court of Kansas passed on the same contention, and in its opinion in Bell's appeal, State v. Bell, 205 Kan. 380, 469 P.2d 448, at page 451, said:

"The purpose of requiring notice to the defendant on invoking the habitual criminal statute is to afford defendant ample time to prepare his defense. When there is nothing in the record on appeal to show prejudice five days are sufficient and reasonable notice to the defendant. (State v. Cruitt, 200 Kan. 372, 379, 436 P.2d 870.) A period of four days has been found ample to prepare such a defense. (State v. Peterson, 198 Kan. 239, 241, 424 P.2d 552.)"

The court also observed that Bell did not "point out why he needed more than the five days which intervened to prepare his defense against these prior felony convictions."

The same was true at the sentencing hearing, where he did not even raise the question of sufficient time.

We agree with the conclusion of the Supreme Court of Kansas on each issue, and hold that the second ground urged by Bell was wholly lacking in merit.

■ This brings us to the third and last ground first asserted by Bell in his petition for rehearing in the proceeding in the United States District Court that "for the same offense" he was "twice put in jeopardy of life and limb." [6]

Before discussing Bell's third contention, we turn to the contention made by the state that Bell should not be accorded any relief on his third ground, for the reason that he had not exhausted his state court remedies with respect to the third ground.

As stated above, Bell first raised the question of double jeopardy in his petition for a rehearing of the habeas corpus proceeding. The United States District Court held it would have been futile for Bell to have raised his third contention in a postconviction remedy proceeding in a Kansas state court, first, because Kansas adheres to the contemporaneous objection rule, citing Mize v. State, 199 Kan. 666, 433 P.2d 397, and since the question was not raised in Bell's trial on the information in the state court, Bell would be concluded from rais-

---

6. Jeopardy of life and limb is not strictly construed, but embraces any criminal penalty, and it is not limited to felonies. See Clawans v. Rives, 70 App.D.C. 107, 104 F.2d 240, 242; United States v. Farwell, D.C.Alaska, 76 F.Supp. 35, 38, 11 Alaska 507.

ing it in a later proceeding in the state court, and second, because Kansas had held in Earwood v. State, decided April 8, 1967, 198 Kan. 659, 426 P.2d 151, that in Kansas states and cities are separate sovereigns and where a person has been tried for an offense in a municipal court, his subsequent trial for the same offense in a state court under a state statute does not subject him to double jeopardy.

We repeat certain dates, stated above, because they are important on the question of exhaustion of state remedies.

Bell was tried, convicted, and sentenced in the Topeka Municipal Court on April 11, 1968. That conviction became final on December 3, 1968.

The information charging him with a violation of the Kansas firearms statute was filed May 16, 1968. Bell's trial on that information commenced on January 8, 1969, and was concluded on January 10, 1969.

He was sentenced under the Kansas habitual criminal statute on February 20, 1969.

Bell filed his application for the writ of habeas corpus on June 22, 1970. He first raised the question of double jeopardy in his motion for rehearing, filed August 13, 1970.

Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435, was decided on April 6, 1970. In that case, the United States Supreme Court reviewed a decision of the District Court of Appeal of Florida, Second District, 213 So.2d 623, which held that where a person had been tried on an offense defined by a city ordinance and convicted or acquitted, a subsequent trial for the same offense, defined by a state statute, in a state court of Florida did not subject him to double jeopardy.

Waller had been charged in a two-count complaint by the City of St. Petersburg, Florida, for the violation of two of its ordinances. The first count charged destruction of city property and the second count charged disorderly breach of the peace. He was tried and found guilty on both counts and sentenced to confinement in jail for 180 days. Thereafter, he was charged by the State of Florida with the offense of grand larceny, by an information filed in the Circuit Court of Florida. He filed an application with the Supreme Court of Florida for a writ of prohibition, charging that the offenses charged and of which he was convicted by the St. Petersburg municipal court and the offense charged in the Florida Circuit Court arose out of the same set of facts, and prosecution in the state court would subject him to double jeopardy. The writ was denied without opinion, 221 So.2d 749. Thereafter, Waller was tried on the charge against him in the state court. He was convicted and sentenced to imprisonment and appealed to the District Court of Appeal of Florida, Second District. In its opinion, the District Court of Appeal said:

"Assuming but not holding that the violations of the municipal ordinances were included offenses of the crime of grand larceny, the appellant nevertheless has not twice been put in jeopardy, because even if a person has been tried in a municipal court for the identical offense with which he is charged in a state court, this would not be a bar to the prosecution of such person in the proper state court. This has been the law of this state since 1894, as is established in the case of Theisen v. McDavid, 34 Fla. 440, 16 So. 321. . . . The Florida Supreme Court has followed the Theisen case, supra, throughout the years and as recently as July 17, 1968, in Hilliard v. City of Gainesville, Fla., 213 So.2d 689, reaffirmed the Theisen case and stated as follows:

"'This double jeopardy argument has long been settled contrary to the claims of the petitioner. We see no reason to recede from our established precedent on the subject. Long ago it was decided that an act committed within municipal limits may be punished by city ordinance even though the same act is also proscribed as a crime by a state statute. An offender

may be tried for the municipal offense in the city court and for the crime in the proper state court. Conviction or acquittal in either does not bar prosecution in the other.' "

The Florida decisions are based on the principal that the municipality and the state are separate sovereigns, a doctrine followed in many states, including Florida. See Waller v. Florida, 397 U.S. 387, 391, note 3, 90 S.Ct. 1184, 25 L.Ed.2d 435.

In the Waller case, the United States Supreme Court reviewed the doctrine that a state and the municipalities thereof are separate sovereigns, but did not pass on the question of whether the offenses charged in the St. Petersburg municipal court and the offense charged in the state court were identical.

In its opinion in Waller v. Florida, 397 U.S. 387, at pages 390 and 395, 90 S.Ct. 1184, at pages 1186 and 1189, 25 L.Ed.2d 435, the court said:

"We act on the statement of the District Court of Appeal that the second trial on the felony charge by information 'was based on the same acts of the appellant as were involved in the violation of the two city ordinances' and on the assumption that the ordinance violations were included offenses of the felony charge. *Whether in fact and law* petitioner committed separate offenses which could support separate charges was not decided by the Florida courts, nor do we reach that question. What is before us is the asserted power of the two courts within one State to place petitioner on trial for the same alleged crime. (Italics ours.)

\* ' \* \* \* \* \*

"We decide only that the Florida courts were in error to the extent of holding that—

"'even if a person has been tried in a municipal court for the identical offense with which he is charged

in a state court, this would not be a bar to the prosecution of such person in the proper state court.' "

 It follows that the opinion in Waller does not aid us in determining the question of whether the offense charged in the Municipal Court of Topeka and the offense charged in the Kansas state court were identical. As we read the opinion in Waller, it does not detract from the former well settled rule that for the double jeopardy provision to apply, the offense charged and tried in the first case and the offense charged in the second case must be identical in fact and law.[7] It will be noted that in the Waller opinion, the Chief Justice used the phrase, "whether in fact and law."

We agree that it would have been futile for Bell to have invoked the claim of double jeopardy in his trial on the state court information or on his appeal from his state court conviction to the Supreme Court of Kansas, both of which were fully concluded prior to May 18, 1970, when the petition for rehearing in Waller v. Florida was denied. 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 79.

We also agree that it would have been futile for Bell to have sought relief on his claim of double jeopardy in a postconviction remedy proceeding in a Kansas court prior to the denial of the petition for rehearing in Waller. However, after the petition for rehearing in Waller was denied, it is not likely that Kansas would have continued to follow the doctrine of separate sovereigns, and between May 18, 1970, and the filing of his application for the writ of habeas corpus on June 22, 1970, Bell could have filed an application for postconviction relief in a Kansas state court with some hope that Kansas would no longer adhere to the separate sovereign doctrine. From May 18 to June 22 is only 35 days, however, and it may well be that counsel for Bell did not learn of the Waller decision before he filed his application

7. Hattaway v. United States, 5 Cir., 399 F.2d 431, 432; Bartlett v. United States, 10 Cir., 166 F.2d 928, 931; Slade v. United States, 10 Cir., 85 F.2d 786, 790; McGinley v. Hudspeth, 10 Cir., 120 F.2d 523, 525; Dryden v. United States, 5 Cir., 403 F.2d 1008, 1009.

for the writ of habeas corpus in the United States District Court.

■ Since the United States District Court fully considered and decided the question of double jeopardy and held adversely to Bell on the ground that the offenses were not identical, we think it would be a useless waste of time and judicial manpower to set aside the decision of the United States District Court and require Bell to seek relief in a Kansas court.

Hence, we turn to the merits of Bell's third claim.

The double jeopardy provision of the Fifth Amendment was made applicable to the states through the Fourteenth Amendment.[8]

■ The double jeopardy provision applies when the offense to which it is interposed is the same as the former offense on which an individual was tried and convicted or acquitted.[9]

■ In the instant case, Bell was tried, convicted, and sentenced for an offense defined in the municipal ordinance, which embraced an additional element, to wit, the element of "carrying on his person in a concealed manner" a "pistol," not embraced in the offense defined in the state statute for which he was tried, convicted, and sentenced in the state court. And Bell was tried, convicted, and sentenced for an offense defined in the state statute, which embraced an additional element, to wit, the element of a previous conviction of "committing or attempting to commit * * burglary," not embraced in the municipal

ordinance for which he was tried, convicted, and sentenced in the municipal court. Moreover, the prior conviction is the gist of the offense charged in the state's information. Absent the fact of a prior conviction, "to own a pistol, or to have or keep a pistol, or to have or keep a pistol in his possession or under his control" (the words of the Kansas statute) are perfectly innocent acts.

Thus, it will be seen that the same evidence would not prove both offenses, which is the test laid down generally by the courts for determining whether the offenses charged were the same.[10] There was one significant fact which had to be proved to establish the offense charged in the municipal court case, which was not necessary to be proved to establish the offense charged in the state court case, and one significant fact that had to be proved to establish the offense charged in the state court case, which was not required to be proved to establish the offense charged in the municipal court case. See Lawton v. Hand, 186 Kan. 385, 388, 350 P.2d 28, 31.

The facts in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, upon which Bell relies, were very unusual. In that case, six men engaged in a game of poker were robbed by three or four masked men. Four persons were charged with seven separate offenses, the armed robbery of each of the players and the theft of a car from one of the players.

In May 1960, Ashe, the petitioner, went on trial on the charge of robbing Donald Knight, one of the poker players. Knight and three of the other poker play-

8. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707; Booker v. Phillips, 10 Cir., 418 F.2d 424, 425. The decision in Benton v. Maryland applies retroactively.
 See Ashe v. Swenson, 397 U.S. 436, 437, note 1, 90 S.Ct. 1189, 25 L.Ed.2d 469; North Carolina v. Pearce, 395 U.S. 711, 719, 89 S.Ct. 2072, 23 L.Ed.2d 656.

9. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656; United States v. One Dodge Sedan, 3 Cir., 113 F.2d 552, 554.

10. Ross v. United States, 9 Cir., 103 F.2d 600, 603; United States v. Frontier Asthma Co., D.C.W.D.N.Y., 69 F.Supp. 994, 998; Smith v. United States, D.C. Md., 277 F.Supp. 850, 863; Hattaway v. United States, 5 Cir., 399 F.2d 431, 432; McGann v. United States, 4 Cir., 261 F.2d 956, 958; Duke v. United States, 9 Cir., 255 F.2d 721, 724; United States v. Visconti, 2 Cir., 261 F.2d 215, 218; Robinson v. United States, 10 Cir., 143 F.2d 276, 277; Wangrow v. United States, 8 Cir., 399 F.2d 106, 112.

ers testified for the state. The testimony identifying Ashe as one of the robbers was weak, but each of the witnesses described the circumstances of the holdup and identified his individual losses. That part of the evidence was unassailable and was not questioned by the defense. No testimony was offered by Ashe. He relied wholly on the insufficiency of the evidence to identify him. The jury brought in a verdict of not guilty.

Six weeks later, Ashe was tried for the robbery of another participant in the poker game. In that trial, the evidence of identity was much stronger. For example, two of the witnesses who testified at the first trial and had been wholly unable to identify Ashe, testified that his features, size and mannerisms matched those of one of the robbers. Another witness, who had identified Ashe only by his size and actions at the first trial, testified at the second trial that he remembered him by the unusual sound of his voice.

At the second trial, Ashe was convicted.

The Supreme Court held that there was really one issue in each trial, and that was the identity of Ashe as one of the robbers. The Court further held that under the federal rule of estoppel by adjudication, or collateral estoppel, which was embodied in the Fifth Amendment guaranty against double jeopardy, the second trial was wholly impermissible.

But there, the defendant was acquitted at the first trial and convicted at the second trial. Here, Bell was convicted at the earlier trial in the municipal court for a violation of a municipal ordinance, and at the second trial he was convicted for violation of a state statute. Therefore, estoppel by adjudication or collateral estoppel has no application in the instant case.

It is our conclusion that the instant case and the Ashe case are clearly distinguishable by reason of the difference in important and significant facts.

We hold that the decision of the United States District Court in denying relief to Bell on the three grounds asserted by him was correct, and its orders are therefore

Affirmed.

LEWIS, Chief Judge (dissenting in part).

I dissent from that portion of the main opinion which negatives the applicability and rationale of the Supreme Court decisions in *Waller* and *Ashe* to the circumstances of this case.

To me, it seems clear that Bell has been twice prosecuted by a single sovereign and twice convicted for but a single substantive crime, the unlawful possession of a pistol. The evidence concerning the factual possession and the circumstances of such possession was identical in each prosecution. In simple summation and as reflected in the majority opinion, Bell had a pistol in his pocket which he withdrew and threw upon the back seat of his car when approached by officers. This evidence resulted in his conviction for carrying a concealed weapon in violation of the municipal ordinance. Admittedly the element of concealment was necessary to support this conviction. Bell was subsequently convicted of possession of a pistol having previously been convicted of a felony (burglary) in violation of Kansas state law. Proof of concealment was not required.

Since Bell was convicted rather than acquitted at the first prosecution the collateral estoppel doctrine enunciated in *Ashe* has no direct compulsion in the subject case. However, in *Ashe* the Supreme Court indicated that the evidentiary record of Ashe's first trial established that his acquittal was the result of the jury's rejection of the quality of the prosecution's evidence that was offered to establish Ashe's presence at the robbery. The court then reasoned that, since the acquittal established the nonparticipation of Ashe in the robbery, the constitution prohibited a further effort

by the prosecution to present a stronger case on this determinative issue in the second trial. So, and admittedly I now rationalize, had Bell been acquitted of the municipal offense I would consider *Ashe* to be potentially dispositive of the instant case. Acquittal would have rejected the prosecution's proof of concealed possession of the weapon under the particular circumstances that we here consider. Acquittal would have been fatal to the second prosecution unless it could be said that the jury rejected only the element of concealment, thus crediting the officer's testimony in part and discrediting it in part. Such a view would seem judicially unrealistic to me and a resort to technicality which the rationale of *Ashe* rejects. In any event, I reject the emphasis in the majority opinion of the concealment element as negativing the existence of double jeopardy and point to *Ashe* as firmly establishing that the substance of dual prosecutions controls the application of the constitutional prohibition against double jeopardy and its corollary termed collateral estoppel.

I must, of course, agree with the majority that the Supreme Court decision in *Waller* is not dispositive here. But *Waller* and the case at bar are not complete strangers. Each case considers the application of double jeopardy to successive prosecutions by a municipality and a state arising from the same acts of the accused. However the offenses considered in *Waller* were misdemeanors of destroying public property and breach of the peace with a subsequent prosecution for grand larceny. The High Court held the dual prosecutions to present the potential of double jeopardy but understandably left open to the Florida state court the initial determination of whether the several offenses and prosecutions did constitute double jeopardy under current guidelines. But in the case at bar the connection between the subject prosecutions is undisputably clear. The substance of the two prosecutions is the same, the proof of that substance is identical, and the criminal act is identical.

The only difference is one of status not substance—proof of Bell's previous conviction was required in the state prosecution. I cannot consider this entirely independent factor as one negativing the application of a constitutional right. The hard fact remains that the procedure followed by the state allowed a dry run and, of course of much more importance, that Bell has been forced to serve two sentences not only for the same act but under what I must term to be the same charge. I would grant him relief.