**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lee W. MERRICK, Defendant-Appellant.**

**No. 71–1460.**

United States Court of Appeals, Tenth Circuit.

July 19, 1972.

Rehearing Denied Aug. 25, 1972.

Max D. Wheeler, Tax Div., Dept. of Justice (James L. Treece, U. S. Atty., and Richard J. Spelts, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Melvin A. Coffee, Denver, Colo. (Robert D. Inman, and Joseph H. Thibodeau, Denver, Colo., on the brief), for defendant-appellant.

Before BREITENSTEIN, SETH, and McWILLIAMS, Circuit Judges.

BREITENSTEIN, Circuit Judge.

A jury found defendant-appellant guilty of Counts II and IV of an indictment charging evasion of federal income taxes for the years 1963 and 1964 in violation of 26 U.S.C. § 7201. He appeals from concurrent sentences of one year on Count II and 18 months on Count IV.

The charges were based on failure to report specific items of income received during the years in question. Defendant owned and operated an animal by-products plant near Greeley, Colorado. The plant processed dead and "downer" animals. The principal product was boneless beef used in pet foods. In 1963-4, defendant sold quantities of boneless beef to Laurents Packing Company, a sausage maker in Fort Wayne, Indiana. Defendant insisted that all payments by Laurents be in cash. The arrangement was that Laurents would issue a check, have it cashed, and give the proceeds to the person who delivered the meat. Defendant did not report the sums so received in his income tax returns.

The first claim is that the delay between the commission of the offenses in 1963 and 1964 and the trial in 1971 denied defendant his Sixth Amendment right to a speedy trial and his Fifth Amendment right to due process. The investigation of defendant's tax returns was referred to the Intelligence Division of the Internal Revenue Service in 1963 and an IRS agent first interviewed defendant in 1965.

Defendant was first charged in a complaint filed April 11, 1969. A preliminary hearing was held four days later. He was bound over for trial and his bond was continued. An indictment was returned on December 4, 1969, and later dismissed for technical reasons. A second indictment charging the same offenses was returned October 6, 1970. Thereafter, defendant filed 14 motions covering a wide range of legal issues and including a November 19, 1970, motion to dismiss for delay in prosecution. The record does not sustain defendant's

claim that he was denied a meaningful hearing on any of these motions. Defendant made no request at any time for a speedy trial. The jury trial was held on March 22–26, 1971.

██ In United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L. Ed.2d 468, the Supreme Court said that the Sixth Amendment speedy trial provision "has no application until the putative defendant in some way becomes an 'accused.'" Defendant in the case at bar became an accused when the April 11, 1969, complaint was filed. We are not impressed with the argument that in an income tax case the accusatorial stage begins when the investigation is focused on the accused by referral of the case to the Intelligence Division. In Marion, business records were delivered to the United States Attorney's office and defendant was interviewed in the summer of 1968. 404 U.S. at 309, 92 S. Ct. 455. The indictment was returned in April, 1970. Ibid. On these facts the Court held that the speedy trial provision was not engaged until indictment. Accordingly, we are concerned with what occurred after the filing of the complaint.

In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the Court considered the speedy trial provision in its application to a murder conviction in a trial held more than five years after the arrest of the accused and found no constitutional deprivation. In so doing, the Court approved a balancing test in which the conduct of both prosecution and accused is weighed on an ad hoc basis. Although not excluding other factors, the Court identified four as pertinent. They are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at ——, 92 S.Ct. at 2192.

██ The pertinent Sixth Amendment delay was between the filing of the complaint on April 11, 1969, and the start of the trial on March 22, 1971. The December 4, 1969, indictment was dis-

missed on June 9, 1970, on motion of the United States Attorney because of violation of grand jury secrecy. Defense counsel was present at the presentation of the motion to dismiss. Among other things he said that it would be unfair to continue the personal recognizance bond if the indictment was dismissed. The trial court agreed. The breach of grand jury secrecy required that the government await the impaneling of a new grand jury. The second indictment was returned on October 6, 1970. A bench warrant was issued and defendant released on an unsecured bond. Various defense motions were filed on November 19, and heard and decided on November 25. Supplemental motions were filed and decided in March, 1971.

Thus we have a total delay of less than two years, a reasonable explanation of the necessity for reindictment, a defendant who at all times was released on an unsecured bond, a prompt disposition of defense motions, and no request by defendant for trial. We are left with the claim of prejudice to the defendant. This involves both Fifth and Sixth Amendment rights. See Marion, 404 U.S. at 325–326, 92 S.Ct. 455, 30 L.Ed.2d 468, and Barker, 407 U.S. at 514, 92 S. Ct. at 2182.

Marion suggests two criteria for determination of whether due process has been violated by delay in prosecution. They are whether the delay "caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." 404 U.S. at 324, 92 S.Ct. at 465. The record contains nothing which suggests that the government delayed to secure tactical advantage. The question is whether defendant had a fair trial.

██ The first claim of prejudice is based on the destruction in 1968 and unavailability of the records of the Laurents Company, the purchaser of the boneless beef diverted from pet food to sausage production. The two men who kept the records testified as government

witnesses and were subject to cross-examination by defense counsel. The claim is that the missing records could have been used to test the reliability and credibility of their testimony. Nothing suggests that they would have helped the defense otherwise. The defense made no effort to rebut the testimony of the Laurents' employees.

Reliance is also had on the unavailability of two witnesses because of death. Both were prospective government witnesses. One, Mrs. Woertendyke, was defendant's bookkeeper and before her death gave an affidavit which was made available to defense counsel, who did not take advantage of the principle recognized in United States v. Brown, 10 Cir., 411 F.2d 1134, 1137, by the offer of the affidavit into evidence. The other, a Mr. Reuter, died on April 21, 1964, after a long illness. We find nothing to show that either would have given any specific exculpatory testimony favoring defendant. Finally, we have the claim that memories had dimmed. This relates basically to the testimony of the Laurents' employees. Their uncertainty as to various details hurt the government, not the defendant. Defense counsel were furnished with the affidavits which these witnesses had given the government and with their grand jury testimony. The record does not reveal the loss to the defendant of any exculpatory evidence. The charged offenses arose from concealment and nondisclosure, which made difficult the government's investigation and which minimize the claim of prejudice from delay. Cf. Nickens v. United States, 116 U.S.App. D.C. 338, 323 F.2d 808, 810 n. 2, cert. denied 379 U.S. 905, 85 S.Ct. 198, 13 L. Ed.2d 178. We are convinced that defendant had a fair trial and was deprived of no Fifth or Sixth Amendment rights.

■ After a hearing the trial court denied defendant's motion to suppress certain evidence. He claims that an IRS agent failed to give him an adequate Miranda warning before his first interview. The trial court held that the warning was adequate and that defendant voluntarily waived his rights. We agree.

The differences, if any there be, between Hensley v. United States, 10 Cir., 406 F.2d 481, 484, and United States v. Lockyer, 10 Cir., 448 F.2d 417, 422, need not be resolved here. The interview was the first between an agent and the defendant after the case was referred to the Intelligence Division. Defendant was not in custody. The agent told him that he was the subject of a criminal investigation, that he had a right to consult and appear with a lawyer, that anything he said would be used against him in a later prosecution, and that he need not answer questions put to him. Nothing more is required by United States v. Dickerson, 7 Cir., 413 F.2d 1111, upon which defendant relies heavily. The efforts of defense counsel to persuade us that defendant was confused and did not understand his rights are not impressive. Defendant's statements during the interview indicated an understanding of his rights and he himself terminated the interview. The contention that the warning was defective because the agent did not tell him that he was under investigation for the year 1964 has no merit. He was told that he was under investigation for criminal offenses. The claim that the word "evidence" as used in the warning did not encompass books and records is frivolous.

■ Several days after the interview defendant's accountant delivered to an IRS agent certain books and records of defendant. He sought to suppress the use of these on the ground that the accountant misinformed him that the IRS could compel their production. The effort to blame the accountant is not persuasive. In his interview with the agent, defendant said: "I would have nothing against giving them [the records] to you if I got them." We are convinced that the Miranda warning was adequate, that the statements made in the interview and the delivery of the records were voluntary, and that the motion to suppress was properly denied.

■ Defendant attacks the sufficiency of the evidence. The government sought to establish tax evasion by the specific items method. This requires proof of specific items of income which were omitted from income tax returns. See Swallow v. United States, 10 Cir., 307 F.2d 81, 82, cert. denied 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499. The roots of the offense lie in concealment and nondisclosure. In judging the sufficiency of the evidence, it must be viewed in the light most favorable to the prosecution and the verdict upheld if there is sufficient direct and circumstantial evidence, together with the inferences reasonably drawn therefrom, to support the verdict. United States v. Ramsdell, 10 Cir., 450 F.2d 130, 133.

The defendant was the owner-operator of a meat by-products plant near Greeley, Colorado. Meat from dead or "downer" cattle was primarily sold to pet food companies which would haul the meat, packaged in containers labeled "inedible—for pet food only," from defendant's plant in the purchasers' trucks. In 1963, the plant manager of Laurents met defendant and discussed the purchase of frozen boneless beef. Defendant insisted that all payments for the meat be made in cash. This was contrary to Laurents' usual business procedures. Sales of the meat were arranged by defendant, either personally or by telephone, with Laurents. The meat came frozen in unmarked 50-pound cartons. Defendant specifically ordered that the manufacturer of the boxes leave them unmarked. The meat was usually delivered in U-haul or unmarked trucks bearing Colorado license plates. On two occasions a tractor-trailer rig was rented for the meat delivery and each time defendant paid part of the truck rental to the driver.

Payment was by check drawn on Laurents' account and payable to cash or a fictitious payee. The plant manager or the bookkeeper would accompany the deliverer of the meat to a local bank where the check would be cashed and the proceeds given to defendant on at least one occasion, and at various times to Garth Merrick or Don Kane who had delivered the meat. Garth Merrick was the son of the defendant and Don Kane was defendant's son-in-law. Both were at various times employed by defendant.

Six checks representing 1963 transactions varied in amount from $3,400 to $3,700. Sixteen checks representing 1964 transactions varied in amount from $1,000 to $13,200. The proceeds were not deposited in defendant's business accounts, shown on defendant's business records, or reported on defendant's federal income tax returns. The additional tax liability was $9,135 in 1963 and $48,541 in 1964.

■ The government relied on circumstantial evidence and reasonable inferences to be drawn therefrom. In line with Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150, the Tenth Circuit is committed to the rule that circumstantial evidence need not exclude every reasonable hypothesis other than that of guilt. See Golubin v. United States, 10 Cir., 393 F.2d 590, 592, cert. denied 393 U.S. 831, 89 S.Ct. 100, 21 L.Ed.2d 102. Defense counsel argue that this rule is no longer viable because of In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. In Winship the Court held that due process required proof beyond a reasonable doubt in all proceedings against a juvenile involving a criminal offense. We see no conflict between Winship and Holland. Holland states that the government must "prove every element of the offense beyond a reasonable doubt." 348 U.S. at 138, 75 S.Ct. at 137. We decline to review our decisions which have followed Holland. The trial court properly instructed the jury on both reasonable doubt and circumstantial evidence. The jury found defendant guilty. Substantial evidence and reasonable inferences therefrom sustain those verdicts and we will not disturb them.

■ The tax returns for the years in question were filed in Louisville, Kentucky. Copies authenticated by the IRS

District Director in Denver, Colorado, were received in evidence. The Director certified that each copy is a true copy of the identified return "on file in this office." This is enough to satisfy the requirements of 26 U.S.C. § 7513(c), 28 U.S.C. § 1733(b), Rule 27, F.R.Crim.P., and Rule 44(a) (1), F.R.Civ.P. See also Hollingsworth v. United States, 10 Cir., 321 F.2d 342, 352. Defendant does not dispute the truth or accuracy of the authenticated copies. They were properly received in evidence.

■ The trial court's instruction on presumption of knowledge of contents of tax returns conforms with our decision in United States v. Wainright, 10 Cir., 413 F.2d 796, 802, cert. denied 396 U.S. 1009, 90 S.Ct. 566, 24 L.Ed.2d 501. The trial court refused to instruct the jury that a civil case might be brought against defendant to recover unpaid taxes, interest and penalties. We see no relevance in such an instruction. The remaining objections to the instructions deserve no mention.

Affirmed.

Van Dusen, Circuit Judge, dissented and filed opinion.