UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony T. SANTOS, Anthony C. Cepeda,
Tito Naputi, David Lujan, Vicente M.
Santos, Pedro Q. Salas, Juan Q. Salas,
Defendants-Appellants.

Nos. 77–3018, 77–3019, 77–3020, 77–3021,
77–3022, 77–3105 and 77–3106.

United States Court of Appeals,
Ninth Circuit.

Jan. 4, 1979.

Ralph D. Martin, Washington, D. C., for plaintiff-appellee.

Before BROWNING and ANDERSON, Circuit Judges, and WATERS *, District Judge.

PER CURIAM:

Appellants, correctional officers and supervisors at the Guam Territorial Prison, were convicted of depriving certain prisoners of their civil rights in violation of 18 U.S.C. § 242 and of being accessories after the fact, 18 U.S.C. § 3. Appellants were sentenced and then filed timely notices of appeal.

The facts of this case are in some dispute but may be summarized as follows. On Sunday morning, February 29, 1976, eleven prisoners at the Guam Penitentiary refused to immediately return to their cells after religious services. These prisoners then barricaded themselves in the "North Dormitory" of the prison for several hours. The "demonstration" was a peaceful one up to this time.

Appellant Lujan, Deputy Director at the penitentiary, then called a meeting of the prison guards. The meeting was delayed for a period of time while other off-duty guards could be called in. Some of the off-duty guards may have been drinking prior to their arrival at the prison. At the meeting, Lujan directed the guards to return the prisoners to their cells, and to use force if necessary. Prison guard Payton testified that at least one of the other guards was very angry and had exhorted his fellow guards in obscene language to "get [those prisoners]."

After the meeting, a group of about 15 guards then went to the North Dormitory. Defendant Joaquin Baza conversed with the inmate spokesman, William Garrard. As a

Fred Kerley, Howard Trapp, Frank G. Lujan, Agana, Guam, for defendants-appellants.

* The Honorable Laughlin E. Waters, United States District Judge for the Central District of California, sitting by designation.

result of this discussion, the inmates agreed to peacefully return to their cells in exchange for the opportunity to meet with Deputy Director Lujan the following Tuesday to discuss their grievances. The evidence indicated that none of the prisoners then exhibited any sign of injury.

There is some disagreement about what occurred next. The United States offered the testimony of witnesses who stated that, after the prisoners had returned to their cells, some of the guards then went from cell to cell assaulting and seriously injuring eight inmates. Appellants, on the other hand, offered testimony to the effect that any injuries suffered by inmates were the result of the guards having to defend themselves from attacks by the inmates.

Appellants raise several issues on this appeal; however, only two of them require any extended analysis. Appellants Tito Naputi, Anthony C. Cepeda, Vicente M. Santos, Anthony T. Santos, and Juan Q. Salas first argue that the district court erred in denying their motion to dismiss the indictment on the grounds of prejudicial pre-trial and pre-indictment delay. These appellants assert that the total pre-trial delay involved in this case was fifteen months, that is, the period of time which elapsed from the date of the first indictment [1] (March 18, 1976) to the date trial commenced (June 29, 1977). Additionally, all appellants assert that they were deprived of due process of law as a result of the delay between the alleged beatings and the date of the second indictment.

■ The United States Supreme Court has held that a defendant's right to a speedy trial under the Sixth Amendment begins to run when the defendant is indicted or formally charged with an offense. *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). After a defendant has been indicted, the United States must move promptly to bring him to trial. However, dismissal of an indictment is not automatic if an accused is not immediately brought to trial. Rather, a court must examine an assertion of a denial of the right to a speedy trial with the reference to four factors: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right to a speedy trial; and 4) the resulting prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

Initially, this court acknowledges that appellants asserted their right to a speedy trial by filing their April 20, 1977 motion to dismiss the indictment. Furthermore, this court is not impressed by the government's excuse (the "disastrous typhoon") for its delay in indicting this case and moving it to trial.

■ As to the first *Barker* criterion, there appears to be some support for appellants' position that the total amount of pre-trial delay amounted to some 15 months. *See United States v. Merrick*, 464 F.2d 1087 (10th Cir. 1972). But there is no need for this court to choose between the reasoning of the *Merrick* decision and that of other courts which have held that the period of time between dismissal of a first indictment and the filing of a second is to be disregarded in applying the *Barker* test. *See, e. g., United States v. Davis*, 487 F.2d 112 (5th Cir. 1973). Whichever standard is applied, it is clear that appellants did not suffer undue prejudice by the pre-trial delay in this case.

The witness who died, Galo Basalotte, was an alleged victim of appellants' beatings. It is doubtful that his testimony would have assisted appellants. And while it is true that the alleged "weapons" (e. g. broomstick handles) used by the prisoners were lost, photographic evidence of these implements was introduced at trial. Final-

---

1. The first indictment in this case, which named Anthony T. Santos, Vicente M. Santos, Anthony C. Cepeda, Joseph M. Naputi, Tito Naputi, Juan Q. Salas, Pedro Q. Salas, Joaquin Baza and David Lujan, was dismissed by the district court on June 15, 1976. During the next eight months, there was no indictment outstanding, but the United States conceded during oral argument that there was an ongoing investigation. The second indictment was returned February 4, 1977.

ly, appellants' mere speculation that they were prejudiced by the unavailability of the testimony of witnesses who appeared before the March, 1976, grand jury is not enough to require reversal. Appellants had access to all other prior statements of these witnesses in advance of trial, and appellants have failed to point to any inconsistencies between these statements and the testimony elicited at trial.

■ Similarly, there is no merit to appellants' contention that the delay prior to the second indictment deprived them of due process of law. In applying the balancing approach articulated by this court in *United States v. Mays*, 549 F.2d 670, 677 (9th Cir. 1977), we conclude that the eleven month pre-indictment delay was not unduly prejudicial to appellants.

Appellants next assert that the trial court erred in denying a motion to dismiss the indictment on the grounds that the panel from which the grand and petit juries were chosen was not in substantial compliance with the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.* [the Act]. This motion was made 25 days after appellants' counsel had been granted access to the jury selection records.

■ 28 U.S.C. § 1867(a) requires that a motion to dismiss an indictment on the basis of failure to comply with the Act shall be made within seven days after a defendant discovers or should have discovered, by the exercise of diligence, the grounds for the motion. Here, the trial court, by ruling on the merits of the motion, implicitly held that counsel exercised the requisite diligence in filing the motion. We find no fault with such a determination.

■ We also agree with the district court's decision that the jury selection procedures employed in the District of Guam are in substantial compliance with the Act. Since this court's holding in *United States v. Okiyama*, 521 F.2d 601 (9th Cir. 1975), that the District of Guam was not in compliance with the provisions of the Act, important changes have been implemented. The jury questionnaires now specifically ask each prospective juror whether he or she can read, speak and understand English. If

this question is answered affirmatively, and the form of the answers as a whole indicates an ability to understand English, no further questions are asked of that juror. If the prospective juror answers that he or she cannot understand English, that person is then examined by the district court. Minor ambiguities or inconsequential omissions are disregarded as *de minimus.* Thus, unlike the questionnaires in *Okiyama*, the district court here had sufficient information from which to determine the English language proficiency of the prospective jurors. Additionally, all decisions as to disqualification are now made by the district court.

■ Appellants contend that the fact that no "follow-up" was made as to the 38 questionnaires not returned to the clerk of the court also constitutes non-compliance with the Act. We are not persuaded. 28 U.S.C. § 1864(a) clearly provides for discretionary follow-up by the clerk or jury commission for failure to return the jury qualification form. Here, the clerk apparently believed that an 87% response to the questionnaires was sufficient. We do not disagree.

■ Finally, there is no merit to appellants' assertion that the jury selection process in Guam does not result in juries representing a "fair cross section of the community." *See* 28 U.S.C. § 1861. Appellants have not met their burden of showing "systematic exclusion of [an] identifiable group within the community." *United States v. James*, 453 F.2d 27, 29 (9th Cir. 1971). Indeed, appellants have not even identified which groups have allegedly been excluded by Guam's jury selection system.

■ Appellants' other arguments merit brief comment only. The substitution of Judge Duenas for Judge Thompson after the jury began deliberating, while not in strict compliance with F.R.Crim.P. 25(a), was harmless error. Appellants have not indicated that they suffered any prejudice by the substitution, and our review of the record reveals none. *See United States v. Boswell*, 565 F.2d 1338 (5th Cir. 1978). If a substitution of judges does become necessary, the "new" judge should certify that he

has familiarized himself with the record of the trial.

There was no abuse of discretion in the district court's decision to deny appellants a bill of particulars. See *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963). Nor was it error for the district court to deny substitute counsel for Anthony T. Santos additional time to prepare for trial. *See Eubanks v. United States*, 336 F.2d 269 (9th Cir. 1964). Counsel had at least two weeks to prepare for trial and was not precluded from consulting with other defense counsel after he was appointed.

Finally, appellants David Lujan, Pedro Q. Salas and Anthony T. Santos argue that the evidence was insufficient to convict them. We have carefully reviewed the record in this case, with specific reference to the portions of the transcript noted by appellants. After examining this record in a light favorable to the Government, *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), we conclude that the evidence was sufficient to sustain the convictions.

The judgments of conviction as to all appellants are affirmed.