**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Martin HUFFMAN, Defendant-Appellant.**

No. 77–1741.

United States Court of Appeals, Tenth Circuit.

Submitted Aug. 8, 1978.

Decided March 29, 1979.

552

Steven W. Snarr, Asst. U. S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, on brief), for plaintiff-appellee.

John R. Bucher, Salt Lake City, Utah, for defendant-appellant.

Before HOLLOWAY, DOYLE and McKAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant-appellant Huffman has brought this timely direct appeal of his conviction under 18 U.S.C. § 659 for theft from an interstate shipment.[1] His primary contentions on appeal are (1) that his prosecution violated the Fifth Amendment guarantee against double jeopardy, (2) that the Government should have been collaterally estopped from introducing evidence on certain issues at his trial, and (3) that his Sixth Amendment right to a speedy trial has been violated.

Viewing the record in the light most favorable to the Government as we must on this appeal from a guilty verdict, *United States v. Twilligear,* 460 F.2d 79, 81–82 (10th Cir.), the evidence tended to show the following facts:

Defendant entered into a lease agreement with Hams Express, Incorporated on May 21, 1975, for the transportation of canned hams and ham hocks from Chicago, Illinois, to the United States Navy at Alameda and Los Angeles, California. The agreement encompassed the lease of a tractor-trailer for hauling the goods and the services of the defendant to drive the shipment to California. When defendant failed to make daily telephone reports, Hams Express, Incorporated contacted the Federal Bureau of Investigation on May 28, 1975, and reported the truck and shipment as missing.

On May 30, F.B.I. agents in Salt Lake City located defendant and interviewed him. He told the agents he had been on a "bender," that he had gone to a bar at a Travelodge and tried to sell some of the hams, and that he got angry and told two men to "just take the whole truck." (I R. 46). There was other proof the hams were sold for $5,500, that defendant got $4,000 in cash, and another man got $1,500. (Id. at 55–56). Since defendant had no authority to sell the cargo of hams, on June 2, 1975, the United States Magistrate issued a complaint against him. On July 11, defendant waived indictment and was arraigned on an information charging him with the theft of Government property in violation of 18 U.S.C. §§ 641 and 2.

After the case was set for trial, the Government discovered in the course of interviews with its witnesses that title to the hams had not yet vested in the United States when defendant sold the hams. On October 28, 1975, the Government filed a supplemental complaint against defendant alleging violation of 18 U.S.C. § 659, theft from an interstate shipment, and a motion to dismiss the charge under § 641. When the § 641 charge was called for trial on November 12, the Government renewed its motion to dismiss. The court ordered a jury impanelled and sworn. After counsel for the Government stated that elements of the offense originally charged could not be proved, the court granted a judgment of acquittal.

On January 16, 1976, when present for arraignment on the second charge, the defendant refused to waive indictment by a grand jury. (III R. 2). A grand jury indicted defendant on July 26, 1976, for violation of 18 U.S.C. §§ 659 and 2, theft of an interstate shipment and aiding and abetting. Defendant filed a "Motion for Order of Acquittal" on December 15, 1976, directed to the new charge under 18 U.S.C. §§ 659 and 2, claiming that the Government was collaterally estopped from proving elements of the new charge and that the defendant was twice put in jeopardy. The trial occurred on July 7, 1977, on the second charge, and the jury returned a guilty verdict that day. After several continuances, the judgment of conviction and sentence was filed on March 15, 1978. (I Supp. R. 1). Defendant appeals, and we turn now to his three major appellate contentions.

---

1. Conviction under 18 U.S.C. § 659 carries a maximum penalty of ten years of imprisonment or a fine of up to five thousand dollars ($5,000), or both. Appellant was sentenced to a term of imprisonment of five years, which sentence was suspended. He has been placed on probation for five years subject to the condition that he participate in an alcohol treatment program to be designated by his probation officer.

**554**

## I

First, defendant argues that his conviction on the second charge under 18 U.S.C. §§ 659 and 2, theft from an interstate shipment, must be set aside on double jeopardy grounds.

Defendant recognizes the rulings that where one act is a transgression under two statutes, and where different evidence must be used to convict under the statutes, there may be prosecution under both, citing *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489. He says however that there is a test of more recent origin since *Ashe v. Swensen,* 397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469, and he refers to views in the separate opinions of Justice Brennan in *Abbate v. United States,* 359 U.S. 187, 198, 79 S.Ct. 666, 3 L.Ed.2d 729, and *Ashe, supra,* at 448, 90 S.Ct. 1189. He urges adoption of the same transaction test and says that cases applying the same evidence test are distinguishable. He argues that cases applying the same evidence test were ones where the statutes were aimed at substantially different evils, *e. g., United States v. DeMarrias,* 441 F.2d 1304 (8th Cir.) (earlier plea of guilty to driving while intoxicated, etc., and later prosecution for manslaughter), whereas in our case both statutes deal with theft.

The Government replies with two basic contentions. In the first place it is argued that this case is closely parallel to *United States v. Appawoo,* 553 F.2d 1242 (10th Cir.), where we held that the Government was entitled to appeal a "judgment of acquittal" under the circumstances and that the trial court erred in entering a "judgment of acquittal" for defendant when the court had failed properly to hear a motion to dismiss on constitutional grounds before trial, had impanelled a jury and then taken some evidence, and had then entered the "judgment of acquittal" which was actually based on a holding that the application of the statute was unconstitutional. However, in *Appawoo* the Government appealed the "judgment of acquittal" and obtained a reversal to lay a predicate for retrial, along with an appellate ruling that the constitu-

tional holding of the trial judge had been in error. Here, there was no appeal by the Government from the "judgment of acquittal." The judgment was not reversed as was the case in *Appawoo.* The first contention of the Government is thus untenable and we must reckon with the effect of the "judgment of acquittal" on the subsequent prosecution under the theft of interstate shipment charge.

■ The second response of the Government to defendant's double jeopardy defense is that the two offenses are separate and distinct and not identical in fact and law, that the same evidence could not prove both offenses, and that therefore the Double Jeopardy Clause does not apply at all.

We do agree with this contention. It is true that the same theft of property was charged in both indictments. However, a conviction under 18 U.S.C. § 641 for theft of Government property requires proof that the property taken belonged to the Government. On the other hand, a conviction under 18 U.S.C. § 659 for theft of an interstate shipment requires proof of movement of the property in interstate commerce. Thus each statute requires proof of an ultimate fact in addition to the theft, which the other does not, and double jeopardy principles are not infringed. See *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 40, 76 L.Ed. 520; *Gavieres v. United States, supra,* 220 U.S. at 342, 31 S.Ct. 421; *Cox v. Gaffney,* 459 F.2d 50 (10th Cir.), cert. denied, 409 U.S. 863, 93 S.Ct. 153, 34 L.Ed.2d 110; *Bell v. Kansas,* 452 F.2d 783, 792 (10th Cir.).

There remains the contention of defendant that we should adopt the same transaction test and the views on double jeopardy expressed by some Justices of the Supreme Court. See *Abbate v. United States, supra,* 359 U.S. at 196–201, 79 S.Ct. 666 (Brennan, J., concurring); *Ashe v. Swenson, supra,* 397 U.S. at 448–460, 90 S.Ct. 1189 (Brennan, J., concurring). The instant case does present directly problems such as have been addressed in these concurring opinions. However, the test of a single transaction or the same criminal episode has not been

adopted by the Supreme Court and we have declined to apply it. See *United States v. Addington,* 471 F.2d 560, 568 (10th Cir.); *Birch v. United States,* 451 F.2d 165, 167 (10th Cir.).

In sum, since we agree that the charge of theft of Government property under § 641 is separate and distinct from that of theft of an interstate shipment under § 659, we conclude that the judgment for defendant on the former charge does not bar prosecution on the latter.

## II

Defendant's second major argument is that in multiple prosecutions the Government should be collaterally estopped in a later trial from introducing evidence on issues decided against it in a first trial. Defendant says that here the Government at the first trial failed to present evidence on any issue and therefore a judgment of acquittal was granted. More specifically, he argues that the issues of intent, identity, taking and the like were necessarily found for the defendant at the first trial and hence the Government was collaterally estopped from introducing evidence on those elements of the charge of theft from the interstate shipment at the second trial. (Brief for Appellant, 7).

It is clear that principles of collateral estoppel are available in proper circumstances in criminal trials. See *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469; *Sealfon v. United States,* 322 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180; *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161. The rule is not applied with a hypertechnical and archaic approach, but with realism and rationality. This approach requires examination of the record in the prior proceeding, including the pleadings, evidence, charge and other relevant matters. *Ashe, supra,* 397 U.S. at 444, 90 S.Ct. 1189. The inquiry must be set in a practical frame with an eye to all the circumstances of the proceedings. *Sealfon, supra,* 322 U.S. at 579, 68 S.Ct. 237.

Following this approach, we must focus particularly on the proceeding when the trial court granted the "judgment of acquittal" on the first charge, theft of Government property. On that occasion on November 12, 1975, the case was called on a calendar where it had apparently been set for trial. (II Supp. R. 1, 4). An array of jurors was available.

When the case was called Government counsel advised the court of his pending motion to dismiss which had been filed October 28. The Assistant United States Attorney told the court that a supplemental complaint for theft of an interstate shipment had been filed, that the Government had been misinformed as to ownership of the property, and that the Government could not prove the charge originally made for theft of Government property. (Id. at 1–5). The defendant objected to dismissal. His counsel said that the Government had had five months to determine if the property was that of the Government. At this point the court had a jury impanelled and sworn.

The Government attorney then said further that the Government did not "have witnesses to prove the essential elements of the crime. They are non-existent." (II Supp. R. 3). The attorney explained that the F.B.I. had advised that the hams were Government property, that when the case was set for trial witnesses were re-interviewed, that it was discovered for the first time that there was an ownership question, that ownership had not passed to the Government, and that a supplemental charge had been filed.

The defendant objected again to dismissal. His attorney said the Government had been advised of these facts earlier, that the defendant was ready for trial, that he was from California and had had great expense and inconvenience, and that he was unable to work. (Id. at 5).

The trial judge then stated that he agreed with defendant's position, that it sounded as though there was a belated attempt by the Government to get a postponement, and that defendant "has been in jeopardy." The jury was excused and the

court then directed preparation of an order, stating:

All right. Dismissed. That is, not dismissed. Judgment of acquittal. Motion for judgment of acquittal is granted.

■ There were thus two apparent grounds for the trial court's action—failure of the Government to offer any evidence and the Government's announcement that it could not prove the elements of the charge of theft of Government property under 18 U.S.C. § 641. More specifically, it is clear that what the Government confessed was that it could not prove Government ownership of the property in question.

From these circumstances we cannot agree that the Government is collaterally estopped from proving the elements of the second charge of theft of an interstate shipment under 18 U.S.C. § 659. If the judgment is viewed as a sanction imposed for failure to prosecute the charge of theft of Government property, no particular issues were decided which are pertinent to the subsequent charge of theft from an interstate shipment. And if the whole record and the judgment adverse to the Government are considered, as *Ashe* requires, the only ultimate fact determined clearly seems to be lack of proof of Government ownership of the property, which defect the Government confessed in court. From this record that is the only ultimate issue of fact determined by the prior judgment for collateral estoppel purposes. *Ashe, supra,* 397 U.S. at 443, 445, 90 S.Ct. 1189.

Thus we conclude that the Government was not collaterally estopped to prove the elements of the second offense charged, theft of an interstate shipment.

### III

Finally, defendant strenuously argues that his Sixth Amendment right to a speedy trial has been violated so that the case should be dismissed as required by *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56. He maintains that this conclusion is clear when the four factors for judging the speedy trial claim identified in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, are considered.

*First,* we turn to the factor of the length of the delay. The theft allegedly occurred on May 27, 1975. Defendant was arrested and taken into custody on May 30, 1975. (Brief of Appellant, 8). It may be that we should view protection of the speedy trial provision as applying from that date of initial restraint. See *United States v. Marion,* 404 U.S. 307, 313, 320–21, 92 S.Ct. 455, 30 L.Ed.2d 468. And, of course, the actual trial on the second charge did not occur until July 7, 1977.[2] From this standpoint the delay, of course, is very considerable and disturbing.

The case, however, has unusual circumstances which we have outlined earlier. The Government found it was misinformed by the F.B.I. and moved to dismiss the first charge and also filed the second charge of theft from an interstate shipment on October 28, 1975. The case was called for trial on November 12 on the original charge of theft of Government property, the Government brought its motion to dismiss to the court's attention, but the court instead granted a judgment of acquittal on the first charge that day.

The defendant claims that he vigorously objected at that time to any dismissal on the ground that resulting delays would seriously prejudice his interests and defense and argues that this was a strenuous assertion of his right to a speedy trial. We note that it was on this occasion that the trial judge said he agreed with defendant, and that it sounded as though this was a belated attempt to get a postponement. (II Supp. R. 6). In any event, the court then entered the "judgment of acquittal."

The new complaint under § 659 remained on file, however. On January 16, 1976,

---

2. On July 5, 1977, the case was called, some motions were presented and disposed of, and a jury was impanelled. The defendant requested that the case go to the end of the calendar for trial preparation. After the jury was impanelled the trial judge granted a two-day continuance and the case was tried on July 7, 1977.

defendant refused to waive indictment by a grand jury and he was indicted for theft of an interstate shipment on July 26, 1976. Defendant's counsel filed his "Motion for Order of Acquittal" on December 15, 1976, directed to that charge, relying on collateral estoppel and double jeopardy grounds. As noted, trial actually commenced on July 7, 1977.

Thus, there was considerable delay until trial,[3] and this was sufficient to be presumptively prejudicial, causing inquiry into the other factors.

*Second,* we consider the reasons for the delay. The charges made fall far short of being a "serious, complex conspiracy charge," *Barker, supra,* 407 U.S. at 531, 92 S.Ct. 2182, so as to justify some delay. Moreover the delay caused by the need to dismiss and file the new charge resulted from a Government error. We see nothing in the record suggesting any intentional harassment or oppression on the part of the Government; nevertheless, the error is not a plus for the Government and the delay it caused is a factor of some weight against the Government.

■ The Government says that the defendant contributed to the delay by his refusal to waive indictment by a grand jury.[4] We do not agree. Defendant's reliance on his Fifth Amendment right to indictment by a grand jury should not be charged against him. This is a neutral factor we feel.

For the most part the delay is not explained. Perhaps crowded dockets and responsibilities of the court and prosecutors contributed to the delay. However, even such unintentional delay must be considered since the ultimate responsibility for such circumstances rests with the Government and not the defendant. *Strunk v. United States, supra,* 412 U.S. at 436, 93 S.Ct. 2260.

*Third,* we come to the defendant's assertion of his right to a speedy trial. As noted, he claims he asserted the right when he objected to dismissal of the first charge on November 12, 1975. This objection was made when the case was called for trial, the Government sought to dismiss, and the judgment of acquittal was granted. The defendant did then object on grounds relevant to his right to a speedy trial, asserting his readiness for trial, hardship to him and expense since he was from out of state, the difficulty of finding work and the like. The trial judge said that he agreed with defendant that the Government's action looked like a belated effort to obtain a continuance. While we see no real basis for this conclusion by the court, we do agree that defendant's objections did have the clear effect of demanding a speedy trial—at that time.

■ However, after the judgment of acquittal was granted that day, the story changed. The defendant did not thereafter reassert his right to a speedy trial by motion or otherwise until he orally moved for dismissal on July 5, 1977, two days before actual trial. (I R. 3–4). Failure to assert the right makes it difficult for a defendant to prove that he was denied a speedy trial. *Barker, supra,* 407 U.S. at 532, 92 S.Ct. 2182. In view of defendant's long silence until his oral motion, we feel that his position is seriously weakened in claiming a Sixth Amendment infringement.

---

3. The delay until trial on July 7, 1977, might be viewed as running from the first arrest on May 30, 1975, or from the filing of the complaint on October 28, 1975, on the second charge. In *United States v. Merrick,* 464 F.2d 1087, 1090 (10th Cir.), cert. denied, 409 U.S. 1023, 93 S.Ct. 462, 34 L.Ed.2d 314, the entire period was considered where a reindictment was necessary, but this was on the same charge. Since the first charge here was disposed of by the judgment of acquittal, arguably we should only count the delay from filing of the second complaint in October, 1975. In either event the delay was considerable and sufficient to be of serious concern, triggering a full analysis under *Barker.*

4. As noted earlier, on January 16, 1976, defendant refused to waive grand jury indictment and on July 26, 1976, the indictment under 18 U.S.C. §§ 659 and 2 was filed.

*Fourth,* we must weigh possible prejudice to the defendant. There is no claim of prejudice from pretrial incarceration. Anxiety and concern of defendant regarding the charges must be presumed, and they were endured for some time. In this connection we note that defendant's counsel referred to his great expense and great inconvenience and inability to work when he objected on November 12, 1975, to dismissal of the first charge and filing of a new charge. (II Supp. R. 5).

The most significant element of possible prejudice is impairment of the defense. *Barker, supra,* at 532, 92 S.Ct. 2182. In this regard defendant's claim is that by the time of trial three witnesses had "become unavailable, leading to impairment of the defense." (Brief of Appellant, 10). Defendant's attorney stated the day the trial began that they would support the defendant's motion to suppress his statements made to the F.B.I. on the basis that he was intoxicated when he spoke to the agents.[5]

It is true that defendant's statements to the F.B.I. were damaging evidence against him. However, the three witnesses were not identified, and there was merely a conclusory statement that they had "become unavailable . . ." In the circumstances we feel that the basis for the claim in this respect is not overly persuasive. See *United States v. Gibson,* 513 F.2d 978, 981 (6th Cir.).

■ While there is some force to the Sixth Amendment claim, particularly because of the length of delay, weighing all of the *Barker* factors, we conclude that the defendant's constitutional right to a speedy trial was not infringed.

In sum, we find no reversible error and the judgment is accordingly

AFFIRMED.

McKAY, Circuit Judge, dissenting:

I depart from the majority on its double jeopardy analysis. I believe the Double Jeopardy Clause was violated by the second prosecution of Huffman for the same act of theft he was charged with in the earlier trial.

Theft is normally a target of state criminal law. However, since it was the federal government that wished to prosecute Huffman, it had to find some basis of jurisdiction. It elected to charge that government property was stolen in violation of 18 U.S.C. § 641 (1976). When the government admitted it could not prove the requisite jurisdictional fact, the defendant was acquitted.[1] A second prosecution was then brought for the same theft, this time on the basis that the theft was from an interstate shipment in violation of 18 U.S.C. § 659 (1976). The interstate character of the shipment was known, of course, from the beginning. This time Huffman was convicted. Except for federal jurisdictional elements, there was no difference between the first prosecution, which resulted in an acquittal, and the one ultimately resulting in his conviction. Both prosecutions sought to convict him for the same act of theft.

I believe that meaningful double jeopardy protections are infringed by successive prosecutions for the same act, particularly when the additional element of an "offense" is merely a jurisdictional basis for prosecution and not a substantive fact in the evil whose prevention is sought.

---

5. The statement of defendant's attorney made on July 7, 1977, just before the taking of evidence, was as follows (I R. 8–9):

MR. BUCHER: I have one other motion, Your Honor. It's a motion to suppress any statements made by the defendant and I have lost three of my witnesses, Your Honor, because of the age of the case and because they evidently perhaps felt that the defendant was acquitted in the first instance. I have lost three of my witnesses to support that but I believe I can use the defendant to show he-

was intoxicated at the time he spoke to the FBI.

THE COURT: Well, you are going to have to put on proof of that. The motion is denied at this time. Bring in the jury.

1. The prosecution was not terminated until after a jury had been empanelled and sworn. The majority acknowledges that this constituted an acquittal. For purposes of double jeopardy analysis, jeopardy had attached.

Whether a defendant is guilty or not, the Double Jeopardy Clause is aimed at preventing what amounts to either harassment or wearing a defendant down.[2] In my view, affirmance in this case invites just such actions on the part of the government.

The majority reaches the result it does by relying on the "same evidence" test of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 40, 76 L.Ed. 520 (1932). In my opinion, the *Blockburger* analysis is not always adequate to protect defendants from the abuses the Double Jeopardy Clause is intended to bar. The present case illustrates at least one of its deficiencies. Even if the two "offenses" involved in this case can be considered separate under *Blockburger,* the prejudice to the defendant involved in successive prosecutions for exactly the same act could have been avoided had both "crimes" been charged in the initial prosecution. In this regard I believe that the "same transaction" analysis recommended by Justice Brennan would be a preferred approach. *See Ashe v. Swenson,* 397 U.S. 436, 448–60, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring).[3] Except in rare circumstances, all the charges against a defendant that grow out of a single act should be brought in a single proceeding. *Id.* at 453–54, 90 S.Ct. 1189.

---

**2.** In this case the defendant was required to make separate trips from California to Utah to defend himself against separate prosecutions for the same act. The delay between his arrest and the beginning of the second trial was about 25 months in duration. The repose that acquittal should have entitled the defendant to, and which the Double Jeopardy Clause was de-

signed to ensure, was abrogated by the second prosecution.

**3.** Justice Brennan recently reasserted his position on this issue in his concurring opinion in *Brown v. Ohio,* 432 U.S. 161, 170, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).