UNITED STATES of America, Plaintiff,

v.

James Edward ALEXANDER, Defendant.

Cr.A.No. 80–CR–54.

United States District Court, D. Colorado.

Jan. 7, 1982.

Joseph F. Dolan, U.S. Atty., Charles H. Torres, Asst. U.S. Atty., Denver, Colo., for plaintiff.

James W. Nearen, Jr., Denver, Colo., for defendant.

## MEMORANDUM OPINION

WINNER, Chief Judge.

Defendant has moved to dismiss saying that he can't be tried on the charges for which he has been indicted. He says this because of the Speedy Trial Act, and neither counsel nor I have been able to find a case in point. The government and appointed defense counsel have filed briefs, and the industry and professional skill of appointed counsel in representing his client should not go unnoticed. He is commended for his efforts, albeit his compensation is mostly by way of commendation rather than by financial reward paid under the Criminal Justice Act. James W. Nearen, Jr.'s work has been in the highest traditions of the legal profession.

Defendant Alexander was one of several defendants, and his case was severed for trial purposes. Trial testimony and post-trial hearings in the companion cases have shown that most unusual treatment has been afforded this matter by the Justice Department. Charges have been leveled at the Justice Department, the United States Attorney's office for the Southern District of New York and the same office for the District of Colorado. I have conducted numerous hearings, and so has a sub-committee of the Judiciary Committee of the United States Senate. Whether there is any fire is something which is unproven, but there is undeniably a lot of smoke when one looks at the accusation which have been made by the defendants, the national press and United States Senators, and those accusations go to the question of a fair trial under the principles of justice governing trials in this country. When it was shown that material required to be furnished under 18 U.S.C. § 3500 had not been supplied, I ordered a new trial. In doing so I spoke hastily and I created an impression that this was the only ground for the new trial and I failed to make the requisite finding of prejudice. That the failure to comply with § 3500 was the straw which broke the camel's back rather than the single reason for the new trial order I tried to explain in an order entered on the government's motion for reconsideration of the new trial order. In its entirety, that order says:

"I ordered a new trial in this case. I did so because I think that the evidence in the case against this defendant is weak; that the slightest change in the testimony might change the result and that the interests of justice require a new trial. The government failed to comply with Brady, but that is not the only error on the part of the prosecution. I just don't think that the defendant received a fair trial taking into account all of the surrounding facts and circumstances, including the many problems which have developed in the companion cases in which James Feeney and Kevin Krown are charged. Evidence vital to defendants has been held back, and the government must accept the consequences of its conscious decision to keep facts secret.

"I have now been asked to change my mind. I decline to to so. The government wants some sort of a stay while it thinks about appellate review. I don't know how to stay an order granting a new trial and I decline to try to do so. If the government wants appellate review, it can ask for it, but I recommend that a long, hard look be given to a case cited in some of the appellate proceedings in *Feeney*. The case I have in mind is *Allied Chemical Corporation v. Daiflon, Inc.* (1980) [449. U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193]. That was a summary reversal of the Court of Appeals' use of mandamus to order restoration of part of a jury verdict set aside on motion for new trial. In the course of the summary reversal, the Supreme Court said that mandamus wouldn't lie and it said, 'An order granting a new trial is interlocutory in nature and therefore not immediately appealable.'

"I mention this settled law in support of my belief that there is no stay of any sort which will interrupt the running of the time specified in the Speedy Trial Act for holding new trials, and I mention it as a word of caution to the government.

"Dated this 27th day of July, 1981."

The case to which I invited the government's attention is one which resembles this one in many respects. It was a civil case, but I perceive no reason that the rule there announced should be different in criminal cases. In its summary reversal of the Tenth Circuit, 612 F.2d 1249, the Supreme Court, 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 1931, explained that the trial judge granted a new trial. Being cognizant of the rule that a new trial ruling is interlocutory, plaintiff there did exactly what the government did here, and it tried to get around the non-appealability of an interlocutory order rule by seeking to mandamus Judge Bohanon to reinstate the jury verdict. As I have said, the case was summarily reversed by the Supreme Court with an opinion which says, inter alia:

"An order granting a new trial is interlocutory in nature and therefore not immediately appealable. *The question presented by this petition is therefore whether a litigant may obtain a review of an order concededly not appealable by way of mandamus.* If such review were permissible, then the additional question would be presented as to whether the facts in this particular case warrant the issuance of the writ.

. . . . .

"Although a simple showing of error may suffice to obtain a reversal on direct appeal, to issue a writ of mandamus under such circumstances 'would undermine the settled limitations upon the power of an appellate court to review interlocutory orders.' *Will v. United States, supra* [389 U.S. 90] at 98, n. 6 [88 S.Ct. 269 at 272 n.6, 19 L.Ed.2d 305].

"This Court has recognized that the writ of mandamus 'has traditionally been used in the federal courts only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." ' *Will v. United States, supra,* at 95 [88 S.Ct. at 273] quoting *Roche v. Evaporated Milk Assn.,* 319 U.S. 21, 26 [63 S.Ct. 938, 941, 87 L.Ed. 1185] (1943). Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy. *Will v. United States, supra,* at 95 [88 S.Ct. at 273].

"The reasons for this Court's chary authorization of mandamus as an extraordinary remedy have often been explained. See *Kerr v. United States District Court,* 426 U.S. 394, 402–403 [96 S.Ct. 2119, 2123–2124, 48 L.Ed.2d 725] (1976). Its use has the unfortunate consequence of making a district court judge a litigant, and it indisputably contributes to piecemeal appellate litigation. It has been Congress' determination since the Judiciary Act of 1789 that as a general rule appellate review should be postponed until after final judgment has been rendered by the trial court. A judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would 'run the real risk of defeating the very policies sought to be furthered by that judgment of Congress.' *Id.,* at 403 [96 S.Ct. at 2124]. In order to insure that the writ will issue only in extraordinary circumstances, this Court has required that a party seeking issuance have no other adequate means to attain the relief he desires, *ibid.; Roche v. Evaporated Milk Assn., supra,* at 26 [63 S.Ct. at 941] and that he satisfy the 'burden of showing that [his] right to issuance of the writ is "clear and indisputable." ' *Bankers Life & Cas. Co. v. Holland, supra* [346 U.S. 379] at 384 [74 S.Ct. 142 at 148, 98 L.Ed. 106] quoting *United States v. Duell,* 172 U.S. 576, 582 [19 S.Ct. 286, 287, 43 L.Ed. 559] (1899). In short, our cases have answered the question as to the availability of mandamus in situations such as this with the refrain: 'What never? Well, *hardly* ever!'

"A trial court's ordering of a new trial rarely, if ever, will justify the issuance of a writ of mandamus. On the contrary, such an order is not an uncommon feature of any trial which goes to verdict. A litigant is free to seek review of the propriety of such an order on direct appeal after a final judgment has been entered. Consequently, it cannot be said that the litigant 'has no other adequate means to seek the relief he desires.' The authority to grant a new trial, moreover, is confided almost entirely to the exercise of discretion on the part of the trial court. Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.' *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666 [98 S.Ct. 2552, 2559, 57 L.Ed.2d 504] (1978) (plurality opinion).

"To overturn an order granting a new trial by way of mandamus indisputably undermines the policy against piecemeal appellate review. Under the rationale employed by the Court of Appeals, any discretionary order, regardless of its interlocutory nature, may be subject to immediate judicial review. Such a rationale obviously encroaches on the conflicting policy against piecemeal review, and would leave that policy at the mercy of any court of appeals which chose to disregard it."

With attention called to *Allied Chemical*, and having been told my views of the Speedy Trial Act, the government went ahead and asked for a writ of mandamus requiring me to set aside the grant of a new trial and asking that I stay all proceedings. I said I didn't know how I could stay anything and that I thought a new trial was required. The government also asked the Tenth Circuit to stay everything.

However, with copies to all counsel, I wrote the Clerk of the Court of Appeals the same day the mandamus action and the stay petition were filed in that Court [August 24, 1981]:

"I have received the government's petition for a stay of the new trial I have ordered for the defendant Alexander. Pursuant to the provisions of Rule 21(b) I advise the clerk and counsel that I do not desire to appear in an action brought to set aside my grant of a new trial to the defendant Alexander because I think that there were sufficient errors in the first trial that the interests of justice demand a new trial.

"Being cognizant of the pressures imposed on the Court of Appeals by application for emergency writs, I have vacated the pending trial date, and I shall not again set the case for trial until the Court of Appeals has acted on the petition for writ of mandamus—a petition I have never seen."

The Court of Appeals entered an order on August 28, 1981:

"1. The real party in interest is ordered to file a response to the petition for writ of mandamus on or before Monday, September 21, 1981.

"2. The respondent having stated that the trial will be postponed until this court acts on the petition for writ of mandamus, the motion for stay is moot."

With Judge Barrett dissenting, and relying on *Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305, and *Allied Chemical Corp. v. Daiflon, Inc., supra*, on December 9, 1981, the Tenth Circuit denied the petition for writ of mandamus. *United States v. Winner*, 666 F.2d 447. The next day I wrote counsel saying that if the government did not plan to seek further appellate review, "we should set a trial date unless there has been a violation of the Speedy Trial Act already." My letter concludes,

"Unless counsel have a better procedure to suggest, I ask that the government and defense counsel submit contemporaneous briefs within 20 days in support of and opposing" dismissal under the Speedy Trial Act.

The briefs were filed as requested, and the motion was orally argued on January 5, 1982.

If there is any one thing on which all district judges agree, it is that the Speedy Trial Act is an abomination. However, although I read in the press that one iconoclastic district judge has held the Speedy Trial Act to be unconstitutional, I think that it is something Congress in its wisdom had the power to enact, and I think that the prosecution and the courts are required to follow it to the letter. That being so, I quote the language in the statute [18 U.S.C. § 3161] which I think controls here:

"(e) If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, *the trial shall commence within seventy days from the date the action occasioning the retrial becomes final. If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final,* except that the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical. The periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified in this section. The sanctions of section 3162 apply to this subsection."

18 U.S.C. § 3162 says what sanctions will apply, but § 3163 makes § 3162 inapplicable to the indictment. However, it is to be noted that the government hasn't requested nor has it made any showing justifying the 180 day time period mentioned in § 3161(e). Defense counsel orally indicated long ago that he would move to dismiss and he has moved to dismiss within the time specified in this statute. Therefore, the important question of whether a mandamus action stops the running of the times spelled out in the Speedy Trial Act is squarely before the court, and, if the time continues to run, what sanctions are to be applied. Both parties have briefed these two questions, and I think that all agree that these are the

questions I must decide. Moreover, there is agreement that this is a matter of first impression.

The government's brief is wide of the mark in several respects. In the first place, the time calculations of government counsel differ greatly from the computations of the computer used by the Administrative Office. And, the government bootstraps its time calculations by assuming a favorable answer to the very question which must be decided. The government excludes the time the mandamus petition was pending, and, of course, if that time doesn't count we can try the case within 70 days of the date of the Court of Appeals denied the mandamus. In a nutshell, the government's bootstrap arithmetic is set forth in its brief:

"It is the government's position that the time from the filing of the Petition for Mandamus, 8/24/81, through the time for filing a petition for rehearing [no such petition was filed] which expires on 12/23/81 is all excludable time under § 3161(h) for the following reasons."

Not only does the government assume the very point in issue in making its time calculations, but it pays no attention to the express language of 18 U.S.C. § 3161(e) which says, "The periods of delay enumerated in 3161(h) are excluded in computing the time limitations specified in this section." Without further discussion, it seems apparent to me that the government's arithmetic is entirely wrong unless the underlying question to be decided in this case is decided in the government's favor. The trial has to commence "within seventy days from the date the (order for a new trial) becomes final," subject to an exception not here applicable because the government hasn't asked that it be applied and there is not the slightest showing that facts justifying the exception exist. Therefore, unless the mandamus petition extended the time, viewed in the light most favorable to the government, the trial had to commence within seventy days of July 27, 1981, and October 5, 1981, was seventy days from that date.

As said in the government's brief, had it prevailed in the mandamus action, "Alexander would not be retried, but would be sentenced." The government gambled and it lost. I don't argue that the government didn't act in good faith, but the very fact that in the face of *Allied Chemical*, it went for mandamus suggests that the government recognized how weak its case against Alexander was and that the government didn't want to risk a second short trial.

Later in its brief, the government again argues for exclusion of § 3161(h) times, but those times are excluded from § 3161(e) by the language of that section. Then the government argues something which isn't before me. It argues *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. That case and the other cases cited by the government in this section of its brief deal with pre-indictment delay and with the applicability of the Sixth Amendment to pre-indictment delay as compared with post-indictment delay. I have discussed this difference at some length in *United States v. Hay*, 376 F.Supp. 264, aff'd 527 F.2d 990, and *United States v. Countryside Farms*, 428 F.Supp. 1150. In *Countryside Farms*, I said that I was disagreeing with the Eighth Circuit's thinking expressed in *United States v. Lovasco*, 532 F.2d 59, a case then awaiting argument before the Supreme Court. The Eighth Circuit was reversed in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752. The government's brief misapprehends the question confronting us. The question is not a constitutional one under either the Fifth or the Sixth Amendment. What must be decided is whether the Speedy Trial Act has been violated, and, if it has, what happens next. *Barker v. Wingo's* factors to be applied to Constitutional challenges don't govern when we are reviewing the commands of the Speedy Trial Act. No more is *United States v. Brown*, (1979) 600 F.2d 248, applicable here. The delay there was due to Judge Ritter's illness rather than being due to a calculated gamble taken by the government, but, most importantly, the government disregards Judge Doyle's mention of the fact that:

"The limitations of 18 U.S.C. § 3161(c), Speedy Trial Act do not apply to offenses in which the information was filed on or before July 1, 1976."

*United States v. Brown* then considered and rejected claims that the case should be dismissed on Constitutional grounds by applying the tests of *Barker v. Wingo*. Defendant hasn't pushed for trial while the case was in the Court of Appeals, but he isn't required to do so under the Speedy Trial Act, and *United States v. Huffman*, 10 Cir., 595 F.2d 551, which decided a Sixth Amendment claim, doesn't apply. All in all, in its brief the government hopelessly confuses the Constitutional questions with the Speedy Trial Act's requirements, and the brief fails to address the real question.

The government asked me and it asked the Court of Appeals to "stay" the new trial order. I said that I didn't think that I had the power to "stay" it but that to lessen the workload of the Emergency panel of the Court of Appeals, I would vacate the trial date. The Court of Appeals said that the request that it "stay" the order was moot. If the government truly thought that the original proceeding permitted the Court of Appeals to "stay" the new trial order under Appellate Rule 8 or under some other rule, it surely knew enough about its case to realize that an order from some court was essential to interruption of the running of the Speedy Trial Act's times, and why the government didn't invite the Court of Appeals attention to its ruling that the requested "stay" was moot, I will never understand. If the government thought that the order could be "stayed" it should have so advised the Appellate Court. Instead, the government gambled that it could obtain the extraordinary relief it asked for to avoid having to try a weak case a second time, and the very fact that it asked for a "stay" should be evidence that it was aware of the Speedy Trial Act problems. At least it should have faced up to the headaches of the case after I said in my written order of July 27, 1981, that it was "my belief that there is no stay of any sort which will interrupt the running of the time specified

in the Speedy Trial Act for holding new trials, and I mention it as a word of caution to the government." Understandably, when the Court of Appeals said on August 28, 1981, that the question was moot, it is probable that the Court was unaware of my expressed concern as to the Speedy Trial Act, but the government knew all about it and it elected to take its chances.

That which must govern in this case is the language of the Speedy Trial Act. That language is unequivocal and "good faith" doesn't change its meaning. The mandamus action was a civil case brought against a judge. It wasn't an appeal of the criminal case, interlocutory or otherwise. The seventy days which are to be counted are to be counted under § 3161(e) and that section says, "The periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified in this section." Therefore, no interruptions which are excluded under 3161(h) can help the government. No more does the language in 3161(e) saying that "if the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final," help the government. The "collateral attack" phrase means an attack which sets aside a conviction, and here it was the new trial order rather than a collateral attack which "occasioned the retrial." Maybe an appeal could have extended the time, except under *Allied Chemical* and *Will* there couldn't be a good faith appeal, but a civil suit against the judge filed by the government without participation or fault on the part of the defendant can't rewrite the statute.

■ The government's conduct leaves me no choice as to whether the prosecution is barred under the Speedy Trial Act. It is. But this doesn't end my problems. 18 U.S.C. § 3163 excludes this case from § 3162 because the indictment was returned March 18, 1980. Therefore, I am pretty much on my own as to sanctions except as I may be helped by Rule 48(b) of the Rules of Criminal Procedure. Although

§ 3162 doesn't apply to this indictment, I mention it for whatever help it may give in discerning the intent of Congress. The statute says:

"(2) If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3). In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section."

If § 3162 applied to this indictment I would have to consider:

(a) The seriousness of the offense. The offense is a serious one and this would militate towards a dismissal without prejudice. (b) The facts and circumstances of the case which lead to the dismissal. Those facts and circumstances have been discussed at length. The government argues that it acted in good faith, but it surely acted with fair warning that the Speedy Trial Act times probably were running. I had said that the case was a very weak one and I am sure that the prosecution knew it. I thought that there was a good chance that the government would lose the second time around, and I suspect that the government shared this view. This would suggest a dismissal with prejudice. (c) The impact of a reprosecution on the administration of this chapter and on the administration of justice. I can't see that there would be much impact on either the administration

of the Speedy Trial Act or the administration of justice, so seemingly this would argue for a dismissal without prejudice.

I think that all this discussion shows is that if § 3162 applied to this case, it wouldn't provide much in the way of guidelines as to whether the dismissal should be with or without prejudice. Nor does Rule 48(b) give me any help. That rule says that "if there is unnecessary delay in ... bringing a defendant to trial, the court may dismiss the indictment ..." Using the Speedy Trial Act as a guide as to what is "reasonable," I think that there was unreasonable delay in this case. That being so, the case as to this defendant and as to this defendant only is dismissed without prejudice.

At time of oral argument there was discussion of a probable appeal by the government and/or by the defendant. I invite attention to *United States v. Lanham* (1980) 4 Cir., 631 F.2d 356. If that case doesn't discourage an appeal, perhaps *Parr v. United States*, 351 U.S. 513, 76 S.Ct. 912, 100 L.Ed. 1377, will. It should be unnecessary to again invite the attention of the government to *Allied Chemical Corp. v. Daiflon, Inc.*

I summarize my holding by saying that § 3161(e) of the Speedy Trial Act applies to this prosecution, but that because of § 3163, the sanctions spelled out in § 3162 aren't expressly applicable. However, it is incomprehensible to me that Congress intended that the Speedy Trial Act could be violated by the prosecution without affording a defendant some relief. Moreover, although I don't think that the Speedy Trial Act requires that prejudice be shown as is required in other circumstances, nevertheless I think that there is probable prejudice where a trial judge has said that he thinks the case is very weak and the government elects to fly in the teeth of a recent decision of the United States Supreme Court which was called to the attention of the prosecution. This is especially true where the prosecutor acknowledges that a retrial would be short and simple. In any event, the indictment of James Edward Alexander in this case is dismissed, without prejudice.